STATE of Missouri ex rel. Robert
BEAIRD, Prosecuting Attorney,
Jackson County, Relator,

v.

Justine DEL MURO, Circuit Judge,
Jackson County, Respondent.

No. WD 61267.

Missouri Court of Appeals,
Western District.

March 11, 2003.

Raoul C. Stitt, Kansas City, MO, for relator.

Leon M. Munday, Kansas City, MO, for respondent.

Before BRECKENRIDGE, P.J., LOWENSTEIN and HOLLIGER, JJ.

PATRICIA BRECKENRIDGE, Judge.

This is an original proceeding in certiorari to review the issuance of a writ of habeas corpus directing that Scott C. Poole be released immediately from the custody of the Jackson County Detention Center on $5000 bond pending further proceedings in the Jackson County Circuit Court. The habeas court released Mr. Poole after finding that the revocation of his probation violated his constitutional rights in two respects. First, the habeas court found that Mr. Poole's probation was revoked on grounds of which he was not given notice. Second, the habeas court found that the revoking court impermissibly shifted the burden of proof from the State to Mr. Poole by finding that Mr. Poole violated his probation because he failed to present evidence of employment. Additionally, the habeas court found that the State failed to present evidence that Mr. Poole willfully failed to pay restitution.

The State seeks review of the habeas court's decision by means of a petition for writ of certiorari. The State argues that the habeas court erred because (1) the lack of notice was harmless error; (2) requiring Mr. Poole to provide proof of employment did not improperly shift the burden of proof; (3) there was sufficient evidence that Mr. Poole's failure to pay was willful; and (4) a finding of willful failure to pay is not even required in a case of failure to pay child support. This court finds that the habeas court properly granted relief on the basis that Mr. Poole did not receive notice of all of the grounds upon which his probation was revoked. The judgment of the habeas court granting Mr. Poole's petition for writ of habeas corpus is affirmed.

## Factual and Procedural Background

On July 12, 2000, Mr. Poole pled guilty to the class A misdemeanor of nonsupport. The court sentenced him to 365 days in the Jackson County Department of Corrections. Execution of the sentence was suspended, however, and Mr. Poole was placed on probation for two years. The conditions of Mr. Poole's probation were that he pay $200 on the 15th day of each month to be applied to a child support trust account number, and that he notify the Family Support Division of the Jackson County Prosecuting Attorney immediately, in writing, of any changes in his employment, residential address, or telephone numbers.[1]

On January 9, 2001, the prosecutor sent a notice of probation violation hearing to Mr. Poole. The notice stated, "BE ADVISED that the State has alleged that the above named Defendant has violated a term of the probation in that the Defendant has failed to comply with the order of probation directing defendant to pay $200.00 per month." The notice further stated that a probation violation hearing was set for February 2, 2001, and the purpose of the hearing would be "to determine whether the Defendant has violated this probation by failing to make the payments ordered by the Court." On January 18, 2001, the prosecutor sent Mr. Poole an amended notice that contained the same information, but changed the date of the hearing to February 7, 2001.

Mr. Poole appeared in court on February 7, 2001. The court continued the case to February 21, 2001, and ordered Mr. Poole to obtain a full-time job. Mr. Poole did not appear on February 21, however. An arrest warrant was issued, with a $7500, ten percent bond. Mr. Poole was

1. The record does not include a copy of the order of probation. The conditions of probation mentioned are listed as "special conditions of probation" in the suspended execution of sentence judgment.

arrested, and a probation revocation hearing was set for August 22, 2001.

At the start of the probation revocation hearing on August 22, the court stated that it was addressing two issues: the court's additional condition of Mr. Poole's probation, added in February 2001, that Mr. Poole obtain a full-time job; and Mr. Poole's failure to pay under the suspended execution of sentence judgment. The court asked the assistant prosecutor and Mr. Poole's counsel if that was their understanding of the issues before the court, and both said that it was.

The State then presented the testimony of a court administrator, whose duties included entering and recording child support payments and credits received by the court administrator as trustee of the child support trust fund. Referring to Mr. Poole's payment history report, the court administrator testified that the only payments Mr. Poole made from July 1, 2000, through August 22, 2001, were $500 on January 27, 2000, which came from a bond, and $184 on June 12, 2001.

Following the court administrator's testimony, the State requested that the court execute Mr. Poole's 365–day sentence. In response, Mr. Poole's counsel argued that the State had the burden of showing that Mr. Poole's failure to pay was willful, and the State failed to meet that burden. Mr. Poole's counsel contended that, although the State presented evidence of Mr. Poole's payment history, it did not present any affirmative evidence as to whether Mr. Poole was capable of making those payments.

The court then noted that it had seen Mr. Poole in the courtroom during prior hearings, and Mr. Poole never said that he was disabled nor did Mr. Poole have a disability that was apparent to the court. When the court asked Mr. Poole's counsel if he was injecting the issue of Mr. Poole's inability to pay into the case, counsel responded that he was not going to present any evidence on the issue of Mr. Poole's ability to pay because he believed that it was the State's responsibility to do so. The court asked the parties to provide briefs on the issue and continued the case.

On December 21, 2001, the court entered its judgment revoking Mr. Poole's probation. In its judgment, the court stated:

> From the evidence heard and testimony given, the Court finds beyond a reasonable doubt that [Mr. Poole] violated the terms of his probation in one or more of the following particulars:
>
> 1.  Failing to pay restitution as ordered
>
> 2.  Failing to obtain full time employment as ordered on February 7th, 2001
>
> 3.  Failing to provide to the court evidence of full time employment as ordered on February 7th, 2001
>
> 4.  Failing to appear in court on on [sic] February 21st, 2001.

The court ordered that Mr. Poole be committed to the Jackson County Corrections Center for a period of one year.

The court also entered separate findings of fact and conclusions of law. In its findings, the court stated that when Mr. Poole appeared in court on February 7, 2001, the court had instructed Mr. Poole, as an additional condition of his probation, to obtain full-time employment and come back to court on February 21, 2001, with a letter from his employer verifying his employment. The court stated that during the February 7, 2001 court appearance, Mr. Poole "asserted no reason for his failure to pay and claimed no reason for not being employed. [Mr. Poole] mentioned no physical or mental infirmity that would preclude him from seeking or obtaining a full time job."

The court further found that during the probation revocation hearing, Mr. Poole "declined to present any evidence, refused to raise any defense, or offer any excuse or justification for his failure to abide by the terms of probation." Moreover, the court found that Mr. Poole "personally appeared before the undersigned on several occasions since the inception of this case. [Mr. Poole] does not appear to be suffering any physical or mental disabilities or injuries."

In its conclusions of law, the court stated that Mr. Poole had a duty to inject the issue of his inability to pay into the case before the State's burden of proving his ability to pay arose. Because Mr. Poole "chose to stand mute and offered no evidence or explanation for his all but complete disregard for his probation obligations," the court determined that the State did not have any further duty to show that he was able to pay. Thus, the court concluded that the State met its burden of establishing that Mr. Poole willfully violated the conditions of his probation.

Following the revocation of his probation, Mr. Poole filed a petition for writ of habeas corpus in the circuit court seeking discharge from confinement. The habeas court found that Mr. Poole's constitutional rights had been violated because his probation was revoked on grounds for which he was not given notice and the revoking court shifted the burden of proof from the State to Mr. Poole by finding that he violated his probation by failing to present evidence of his employment. Also, the habeas court noted that the State had not presented evidence that Mr. Poole willfully failed to make support payments, which the revoking court referred to as "restitution." Therefore, the habeas court granted the writ and ordered Mr. Poole released on bond pending further proceedings in the circuit court. The State sought review of the habeas court's action by means of a petition for writ of certiorari. This court issued the writ as a matter of course and of right. *See State ex rel. Nixon v. Jaynes,* 73 S.W.3d 623, 624 (Mo. banc 2002).

## Standard of Review

■■■ Rule 91.01(b) provides that "[a]ny person restrained of liberty within this state may petition for a writ of habeas corpus to inquire into the cause of such restraint." In general, a habeas corpus proceeding is "limited to determining the facial validity of confinement." *Jaynes,* 73 S.W.3d at 624. A habeas corpus proceeding may be invoked to challenge a probation revocation. *Id.*

■■■ When the trial court grants a writ of habeas corpus, the State's remedy is to file a writ of certiorari in an appellate court. "Because there is no appeal from the trial court's grant of a habeas petition, if the State seeks to have the record of the writ of habeas corpus quashed, it does so by filing a petition for writ of certiorari, as it did here." *State ex rel. Nixon v. Kelly,* 58 S.W.3d 513, 516 (Mo. banc 2001). This court issues the writ of certiorari " 'as a matter of course and of right,' " so that this court can review the propriety of the habeas court's action. *Id.* (quoting *State ex rel. Taylor v. Blair,* 357 Mo. 586, 210 S.W.2d 1, 3–4 (1948)). This court then either quashes the writ of habeas corpus or upholds the habeas court's action. *State ex rel. Tolliver v. Bd. of Pub. Serv. of City of St. Louis,* 453 S.W.2d 622, 623 (Mo.App.1970).

■■■ In reviewing the propriety of the habeas court's action, this court's function is to "determine whether the habeas court acted within the bounds of its jurisdiction." *State ex rel. Nixon v. Sprick,* 59 S.W.3d 515, 518 (Mo. banc 2001). "[C]ertiorari is not limited to challenges of subject matter

and territorial jurisdiction. It is available to correct judgments that are in excess or an abuse of jurisdiction, and that are not otherwise reviewable by appeal." *Id.* To determine whether the habeas court acted within the bounds of its jurisdiction, this court reviews only questions of law and not questions of fact and, in doing so, normally may consider only the record that was before the habeas court. *Id.* "The sufficiency of the evidence to support the habeas writ is a question of law and subject to certiorari review." *Id.*

### Habeas Corpus Relief Properly Granted for Lack of Notice

In its first point, the State argues that the habeas court exceeded its jurisdiction when it granted the writ of habeas corpus on the basis that Mr. Poole's right to due process was violated when his probation was revoked on grounds of which he was not given notice. Specifically, the State contends that the failure to provide Mr. Poole with written notice of all of the violations of the terms of probation was harmless error because Mr. Poole had actual notice and "ample time" to produce evidence in his defense and he "chose not to do so."

In a probation revocation proceeding, one of the minimum requirements of due process is that the probationer receive written notice of the alleged probation violations. *Abel v. Wyrick*, 574 S.W.2d 411, 417 (Mo. banc 1978) (citing *Gagnon v. Scarpelli*, 411 U.S. 778, 786, 93 S.Ct. 1756, 1761, 36 L.Ed.2d 656 (1973)). The purpose of requiring notice is not only

to provide the probationer adequate time to prepare a defense on the issue of whether probation violations were committed, but also on the issue of whether probation should be revoked because of the violations or "whether some other less drastic alternative should be invoked." *Id.* "Without notice, both of the nature of the charges and of the evidence to be presented against him, [probationer] could not effectively prepare an explanation of the reasons for his actions and of any extenuating circumstances." *Id.*

Here, Mr. Poole received written notice of only the State's allegation that he violated his probation by failing to pay $200 per month. This was the sole violation alleged in the amended notice of probation violation hearing sent to Mr. Poole in January 2001. Mr. Poole did not receive written notice of the other three violations found by the court in its judgment revoking Mr. Poole's probation. The other three violations found by the court were that Mr. Poole failed to obtain full-time employment as ordered on February 7, 2001; he failed to provide to the court evidence of full-time employment as ordered on February 7, 2001; and he failed to appear in court on February 21, 2001.[2]

The State argues that Mr. Poole's lack of written notice of the remaining three violations was harmless error because he received actual notice of them. Errors that impact constitutional rights may be disregarded only if the court is able to determine that the errors were harmless. *Id.* at 418. The State has the

---

**2.** During the probation revocation proceedings, the court referred to these as "additional conditions of probation." It should be noted, however, that while the record shows that on February 7, 2001, the court ordered Mr. Poole to obtain a full-time job, there is no evidence in the record that this order was made a condition of Mr. Poole's probation.

Nor is there any evidence that providing the court with evidence of full-time employment and appearing in court on February 21, 2001, were added conditions of Mr. Poole's probation. Nevertheless, because neither party raises the issue and it does not affect the result, this court will not address the issue.

burden to show that defects in notice were harmless. *Id.* To meet that burden, the State must show "that even if [probationer] had had proper notice he would not have been better able to explain mitigating circumstances and present alternative remedies." *Id.*

The State argues that Mr. Poole appeared in court on August 8, 2001, following his arrest, and during that hearing Mr. Poole was informed of all four violations. The State contends that because the court then set the probation revocation hearing for August 22, Mr. Poole had two weeks to prepare any evidence and contact any witnesses to refute the other three violations for which he had not received written notice. Because Mr. Poole chose not to present any evidence during the August 22 hearing, the State argues that it met its burden of showing that the failure to provide written notice of three of the four violations was harmless.

There is no transcript of the August 8 hearing in the record before this court, however. Nor does it appear that such a transcript was in the record before the habeas court. This court is limited to reviewing only the record that was before the habeas court. *Sprick,* 59 S.W.3d at 518. The record before the habeas court contains no evidentiary support for the State's assertion that Mr. Poole received actual notice of the other three violations on August 8.

The record does show, however, that Mr. Poole received actual notice of one of the other three violations at the start of the probation revocation hearing on August 22. At the beginning of the hearing, the court stated that it was addressing two issues: Mr. Poole's failure to pay the $200 per month and the court's additional condition that Mr. Poole obtain a full-time job. The court asked the assistant prosecutor and Mr. Poole's counsel if that was their understanding of the issues before the court, and both said that it was. Thus, at that time, Mr. Poole had written notice that revocation of his probation was being sought on the basis of his failure to pay $200 per month, and had actual notice that revocation was being sought on the basis that he failed to obtain a full-time job.

■ Respondent argues that notice of the alleged probation violation on the day of the revocation hearing was insufficient to constitute the notice required by due process. The problem with Respondent's argument is that Mr. Poole's counsel did not object when the court stated that it would be addressing the issue of whether Mr. Poole had obtained a full-time job. To be preserved, constitutional objections must be raised at the first opportunity. *Chambers v. State,* 24 S.W.3d 763, 765 (Mo.App.2000). The purpose of this requirement is to allow the trial court, which in this case was the probation revocation court, " 'the opportunity to correct errors and avoid prejudice in the first instance.' " *Id.* (quoting *State v. Kenley,* 952 S.W.2d 250, 260 (Mo. banc 1997)). In this case, not only did Mr. Poole's counsel fail to raise any constitutional objection when he was informed on the day of the probation revocation hearing that Mr. Poole's failure to obtain a full-time job was an alleged violation for which revocation was being sought, but he affirmatively told the court that he understood that that issue would be addressed during the hearing. Under these circumstances, Mr. Poole waived any due process objection to his receiving actual notice, on the day of the hearing, of the alleged violation that he failed to obtain a full-time job.

Although the record shows that Mr. Poole received written notice of the violation that he failed to pay $200 per month and actual notice of the violation that he failed to obtain a full-time job, there is

nothing in the record showing that Mr. Poole received any notice that the State was seeking to revoke his probation for the other two violations found by the court. These two violations were that Mr. Poole failed to provide the court with evidence of full-time employment as ordered on February 7, 2001, and that he failed to appear in court on February 21, 2001. The record indicates that the first time these two acts of Mr. Poole's were mentioned as violations for which his probation could be revoked was in the court's judgment revoking his probation.

The State argues that Mr. Poole's failure to receive prior notice of all of the violations mentioned in the court's judgment revoking his probation is inconsequential because the judgment indicates that Mr. Poole's probation was revoked on the basis of his having committed *any one* of the violations, and not on the basis of his having committed *all* of the violations. The State contends that, in its judgment, the court deemed each of the violations sufficient to warrant revoking Mr. Poole's probation. Therefore, the State argues that Mr. Poole's failure to pay $200 per month was sufficient, by itself, to warrant revoking his probation.

The State bases this argument on its interpretation of the court's judgment revoking probation. When undertaking to understand the meaning of a judgment, this court makes its own independent assessment, because "[c]onstruction of a court order is a question of law." *Jacobs v. Georgiou*, 922 S.W.2d 765, 769 (Mo.App.1996). "The general rules of construction for written instruments are used to construe court judgments." *Dover v. Dover*, 930 S.W.2d 491, 495 (Mo.App.1996). Thus, the test for whether an ambiguity exists is whether the judgment " 'is reasonably susceptible to different constructions.' " *State ex rel. Div. of Child Sup-*

*port Enforcement v. Hill*, 53 S.W.3d 137, 141 (Mo.App.2001) (quoting *Disabled Veterans Trust v. Porterfield Constr., Inc.*, 996 S.W.2d 548, 552 (Mo.App.1999)). In construing an ambiguous judgment, this court should "ascertain the intention of the [trial] court in entering the order." *Jacobs*, 922 S.W.2d at 769.

In its judgment, the court stated that it found, beyond a reasonable doubt, that Mr. Poole "violated the terms of his probation in one or more of the following particulars[.]" The court then listed the four violations. Following the list of the four violations, the court stated, "**IT IS THEREFORE ORDERED** that the defendant's probation be revoked." The court's finding that Mr. Poole violated his probation in "one or more" of four ways rendered the judgment ambiguous, as it is unclear whether the court found that (1) Mr. Poole violated all four conditions and, therefore, revocation was appropriate; (2) Mr. Poole violated all four conditions, but revocation was appropriate for any one of the violations; or (3) Mr. Poole violated as few as one of the four conditions listed, but revocation was appropriate based upon only that one violation.

Because the judgment is ambiguous, this court must ascertain the court's intent from the record. *Id.* In this case, the court entered separate findings of fact and conclusions of law simultaneously with its judgment. As one of its findings, the court stated:

13. The Court is fully satisfied that defendant violated a condition of his probation as follows: defendant failed to pay child support as ordered in the amount of $200.00 per month. *Sincup v. Blackwell*, 608 S.W.2d 389, 391 (Mo. banc 1980).

The Court is further fully satisfied that defendant violated another condition of his probation as follows: defendant

failed to obtain full time employment and return to court with proof of that employment on February 21st, 2001 as ordered.

Although stated as violations of only two conditions of probation, this finding actually indicates that the court found that Mr. Poole committed all four of the violations listed in the judgment, i.e., he failed to pay the $200 per month as ordered; he failed to obtain full-time employment; he failed to provide proof of that employment; and he failed to return to court on February 21, 2001. In its next finding of fact, the court went on to state that "each such violation was willful." As its last finding of fact, the court stated: "15. The Court finds no reasonable probability that defendant could successfully complete a further term of probation. The Court finds from the evidence that defendant's conduct has been such that alternatives to incarceration are not realistically available."

The language used in this last finding indicates that the court revoked Mr. Poole's probation on the basis of all four violations. The court refers to Mr. Poole's *conduct* as the reason for incarcerating him, and not one particular aspect of that conduct or one specific violation. As this finding follows the court's finding that Mr. Poole committed all four violations, the implication is that the conduct to which the court is referring is Mr. Poole's having committed all four violations. The use of the general term "conduct" indicates that the court intended to rely on not one but all four violations as the basis for revoking Mr. Poole's probation.

Because Mr. Poole did not receive notice as to two of those four violations prior to the probation revocation hearing, the court erred in relying on those violations to revoke his probation. The State has not demonstrated that the failure to provide Mr. Poole proper notice that his probation could be revoked on the bases that he failed to provide the court evidence of full-time employment and he failed to appear in court on February 21, 2001 was harmless error. The State argues that Mr. Poole's decision not to present any evidence on the issue of his failing to pay $200 per month as a basis for revoking his probation indicates that he would not have presented evidence on any of the other violations found by the court. Mr. Poole chose not to present any evidence on the issue of his failure to pay because he believed that the State had the burden of proving that his failure to pay was willful, and the State failed to do so. Simply because Mr. Poole relied on what he believed to be the State's failure of proof on that violation does not indicate that he would have acted similarly with regard to the two violations found by the court for which he received no notice.

This court is unable to conclude that the failure to provide Mr. Poole notice of all of the conditions upon which his probation was revoked was harmless beyond a reasonable doubt. *Abel,* 574 S.W.2d at 418. Because the lack of notice is a sufficient basis upon which to uphold the habeas court's granting Mr. Poole's petition for writ of habeas corpus, this court does not need to address the State's remaining allegations of error. The judgment of the habeas court is affirmed.

All concur.