STATE of Missouri, ex rel. Jeremiah W. (Jay) NIXON, Relator,

v.

The Honorable Mary SHEFFIELD and Phyllis Staley, Respondents.

No. 28941.

Missouri Court of Appeals, Southern District, Division One.

Sept. 30, 2008.

Petition for Rehearing or Reconsideration Transfer Denied Nov. 4, 2008.

Application for Transfer Denied Jan. 27, 2009.

---

Jeremiah W. (Jay) Nixon, Atty. Gen., Ronald S. Ribaudo, Office of Atty. Gen., Jefferson City, for relator.

Michael P. Joyce, Van Osdol & Magruder, P.C., Kansas City, for respondents.

DANIEL E. SCOTT, Presiding Judge.

After Clayton Price lost his criminal appeal, his lawyer was to file and handle a Rule 29.15[1] motion for post-conviction relief (PCR), but missed the filing deadline. Price later sought relief by habeas corpus, which Respondent Sheffield[2]

1. Unless otherwise noted, rule references are to Missouri Court Rules (2007).

2. As Texas County Circuit Clerk, Respondent Staley was joined nominally for purposes of

granted, purporting to vacate the conviction and remand the case for retrial. We granted certiorari to determine if Respondent thereby exceeded her authority.[3]

## Background

A Taney County jury found Price guilty of sodomizing his fiancée's six-year-old daughter. After Price's trial counsel filed the new trial motion, he withdrew in favor of Attorney Carver, who handled the unsuccessful direct appeal. *State v. Price,* 165 S.W.3d 568 (Mo.App.2005).

Instead of filing a pro se PCR motion, Price hired Carver to handle his case. Carver got his filing time mixed up, thinking he had twice as long (180 days) as he actually had (90 days). *See* Rule 29.15(b). Carver notified Price and his family as soon as he realized that he had missed the deadline. Price hired new counsel, and 13 months later, filed a habeas corpus petition in Texas County where he was imprisoned. Respondent held an evidentiary hearing and heard testimony from Price and Carver, plus two witnesses (Miller and Guyer) whom Price called to criticize the techniques used to interview the child-victim and Price's prior legal representation on such issues. Concluding that Price was "abandoned" by Carver and entitled to relief from his procedural default for "cause and prejudice" and "manifest injus-

tice," Respondent purported to vacate Price's conviction, remand the case for new trial, and order Price's immediate release from the Department of Corrections and transfer to the trial court for the setting of bond.

## PCR Remedies and Habeas Relief

■ Rule 29.15 (and for guilty pleas, Rule 24.035) provides a "single, unitary, post-conviction remedy, to be used in place of other remedies," including habeas corpus. *Wiglesworth v. Wyrick,* 531 S.W.2d 713, 719 (Mo. banc 1976), *quoted in State ex rel. Nixon v. Jaynes,* 63 S.W.3d 210, 214 (Mo. banc 2001).[4] A prisoner who does not raise claims in a PCR proceeding waives them, cannot assert them in a subsequent habeas petition, and is said to have "procedurally defaulted" on those claims. *Jaynes,* 63 S.W.3d at 214. "Thus, it is unusual for a court to consider a prisoner's petition for a writ of habeas corpus for claims that should have been raised in post-conviction proceedings." *Id.*

■ *Jaynes* thoroughly reviewed the relationship between PCR defaults and habeas relief under Missouri law, which tracks the U.S. Supreme Court's treatment of federal habeas petitions after PCR defaults in state court. *Id.* at 215–17. "In only the most exceptional cases do courts, state or federal, allow the opportunity to

---

certifying to this court the record of the habeas proceedings. *See State ex rel. Beaird v. Del Muro,* 98 S.W.3d 902, 906–07 (Mo.App.2003). Our references to "Respondent" hereafter involve only Respondent Sheffield.

**3.** A habeas corpus writ cannot be appealed, but can be reviewed by certiorari, wherein our function is to examine the record; determine whether the habeas court exceeded its power or jurisdiction; and either quash or not quash the writ and record of the habeas court. We consider only questions of law, including the sufficiency of the evidence to support the habeas writ. *See generally State*

*ex rel. Nixon v. Jaynes,* 61 S.W.3d 243, 245, 246 n. 1 (Mo. banc 2001); *State ex rel. Nixon v. Sprick,* 59 S.W.3d 515, 518 (Mo. banc 2001); *State ex rel. White v. Davis,* 174 S.W.3d 543, 546–47 (Mo.App.2005); *Beaird,* 98 S.W.3d at 906–07.

**4.** This opinion notes (63 S.W.3d at 213 n. 2) that it has the same caption as the case we cited in footnote 3, because both cases involve the same relator, attorney general, and respondent trial judge. Hereafter, our *"Jaynes"* references are to the case at 63 S.W.3d 210.

litigate claims after conviction that had been previously litigated or were defaulted and, thus, are procedurally barred." *Id.* at 215. Procedurally-defaulted prisoners like Price can obtain habeas relief only by demonstrating "cause and prejudice" or "manifest injustice" (*Id.* at 215–17), two standards which *Jaynes* summarized as follows:

> *Cause and Prejudice:* "Cause" means "'some objective factor external to the defense [that] impeded counsel's efforts to comply with the State's procedural rule.'" *Id.* at 215 (quoting *Murray v. Carrier*, 477 U.S. 478, 488, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986)). "Prejudice" means the prisoner must show, not merely that trial errors created a possibility of prejudice, but that they "'worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions.'" *Id.* at 215–16 (quoting *United States v. Frady*, 456 U.S. 152, 170, 102 S.Ct. 1584, 71 L.Ed.2d 816 (1982)). These are conjunctive criteria, so if "cause" is not proven, "prejudice" need not be considered. *See Murray*, 477 U.S. at 496–97, 106 S.Ct. 2639.

> *Manifest Injustice:* The standard for showing manifest injustice is "actual innocence." *Jaynes*, 63 S.W.3d at 216. The prisoner must show, in light of newly discovered evidence, that it is more likely than not that no reasonable juror would have found him guilty beyond a reasonable doubt. *Id.*

Although Respondent ruled that Price proved both grounds for relief, the record supports neither finding.

**5.** As previously noted, trial counsel filed Price's new trial motion before Carver entered the case.

## Cause and Prejudice

Respondent held, without further explanation or rationale evident from the other findings and conclusions, that Price "sufficiently established cause and prejudice." The record seems to contradict the finding of "cause," since Price bears the burden of Carver's error. *See Coleman v. Thompson*, 501 U.S. 722, 751–54, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991); *Murray*, 477 U.S. at 488, 106 S.Ct. 2639; *State v. Hunter*, 840 S.W.2d 850, 871–72 (Mo. banc 1992). If Carver's error is attributable to Price, it is not "external to the defense" and, therefore, not "cause."

Apparently recognizing this, Respondent now raises three arguments for cause—conflict of interest, affirmative misleading, and abandonment.

### *Conflict of Interest*

■ Respondent claims Carver had a conflict of interest (at least potentially) in handling Price's PCR case after representing him at sentencing and on direct appeal,[5] and that this constitutes "cause." It is unclear that Respondent found more than a potential conflict,[6] which would not be sufficient for relief. *See, e.g., Nave v. Delo*, 62 F.3d 1024, 1034 (8th Cir.1995) and cases cited therein. But even if Carver's conflict was, *arguendo*, both actual and a "factor external to the defense," there is not a scintilla of evidence nor reasonable inference that such conflict *caused* the procedural default. *See Nave*, 62 F.3d at 1034 (must prove that actual conflict adversely affected counsel's performance); *Leisure v. Bowersox*, 990 F.Supp. 769, 827 (E.D.Mo.1998). *See also Brown v. State*, 66 S.W.3d 721, 726 n. 2 (Mo. banc 2002);[7]

**6.** Respondent's order said Carver had "a conflict of interest," but later described that matter and another as "potential conflict[s]."

**7.** "In *Jaynes*, petitioner alleged the reason he failed to file a timely Rule 29.15 motion was

*Jaynes,* 63 S.W.3d at 217.[8] To suggest that Carver defaulted Price's PCR claims to save his own skin utterly ignores a record that compels but one conclusion: Carver simply missed the filing deadline, an error which to his credit Carver admitted candidly, completely, and without excuse.[9]

### Affirmatively Misled

■ Citing *State ex rel. Taylor v. Moore,* 136 S.W.3d 799 (Mo. banc 2004), Respondent also claims there was "cause" because Price was affirmatively misled. *Moore* involved a defendant sentenced to prison under a plea agreement providing for his placement in a program through which he could gain an early release. At the guilty plea hearing, the trial judge and defense counsel affirmatively misled the defendant about his eligibility for that program. The trial judge also sentenced the defendant, contrary to statute, without notifying prison officials or determining that the defendant was program-eligible, which he was not. *Id.* at 801. These external errors, not known or reasonably discoverable during the PCR filing period, resulted in an unlawful sentence. Thus, habeas

relief was granted, allowing the defendant to withdraw his guilty plea. *Id.* at 802.

■ *Moore* does not aid Respondent. The trial judge did not mislead Price at sentencing. Rather, he carefully and accurately explained the PCR filing deadlines to Price (and Carver); that there were two different time limits for two different situations; and did not proceed until Price expressly confirmed his understanding:

> [THE COURT]: [*After generally explaining Price's Rule 29.15 PCR rights and how to file such a motion*] It's important for you to know that there are certain time limits in connection with this motion. There are two different time limits. One of these time limits is that if you don't file an appeal of this conviction, that you have to file that motion within 180 days after you [sic] the time you're received into the custody of the Department of Corrections. That's one of the time limits, and the other time limit is, that if you do take an appeal, and there's a mandate from the Court of Appeals that affirms your convic-

---

because his post-conviction counsel was also his trial counsel and so had a conflict of interest that *caused* him to abandon petitioner." (emphasis ours).

8. "If Warren proves that his appointed lawyer had a conflict of interest and *thereby* forfeited his rights . . . ." (emphasis ours).

9. To note just one such example, Carver testified as follows:
> Q. Okay. So you really had no motive to keep him in prison, did you?
> A. No. I—I don't think so. But, you know, by the same token, I grew very fond of—of Mr. Price and his parents, and really wanted to do a good job for them. And I—I'm sure that I assured them on many occasions that—that I would do what I told them should be done.

And it's—as I said earlier, it's just profoundly disappointing to me that—that I missed the deadline in this case.
> Q. So it's—in this case, isn't it true, that this is—the State did nothing to lead you into thinking there was 180 days, that you just misunderstood the time limits?
> A. No, there was nothing the State did.
> Q. Any third party mislead to—to your— the best of your recollection?
> A. No, it—
> Q. To your knowledge, did a third party mislead—
> A. It was—
> Q. —Mr. Price?
> A. —completely my fault. And I've tried to accept responsibility for that.

tion, then you have to file that motion, that P.C.R., post-conviction-relief motion, within 90 days—so, there's—of the mandate of the Court.

So, there's two different time limits. There's a 180–day time limit. There's a 90–day time limit. The time limit depends upon whether or not you appeal.

Do you understand what I've told you?

[PRICE]: Yes, Your Honor.

Respondent's other arguments—essentially that Carver assured Price and his mother that he would timely file the PCR motion, and that they believed Carver and trusted him to do so—are, in effect, claims of ineffective assistance of post-conviction counsel and categorically unreviewable. *State v. Lyons*, 129 S.W.3d 873, 874 (Mo. banc 2004).

### Abandonment

■■■ Abandonment occurs when post-conviction counsel does not file an amended motion or where post-conviction counsel is aware of the need to file an amended motion and fails to do so in a timely manner. *Barnett v. State*, 103 S.W.3d 765, 774 (Mo. banc), *cert. denied*, 540 U.S. 862, 124 S.Ct. 172, 157 L.Ed.2d 114 (2003). These are the only two situations recognized by the Supreme Court that constitute abandonment.

*Dudley v. State*, 254 S.W.3d 109, 111 (Mo. App.2008).

Recognizing that his claims do not fit these situations, Price asks this court "to support Respondent Sheffield's extension" of abandonment principles.[10] We cannot do what the Missouri Supreme Court refuses to do. "Barnett's plea that this Court should recognize a third form of abandonment is unpersuasive.... This Court has repeatedly held it will not expand the scope of abandonment to encompass perceived ineffectiveness of post-conviction counsel." *Barnett*, 103 S.W.3d at 773–74.

Further, abandonment applies only to amended, not original, PCR motions. Price urges us to ignore that distinction, but we are bound by *Bullard v. State*, 853 S.W.2d 921, 922–23 (Mo. banc 1993), which explains why original and amended petitions are treated differently and overrules prior authority suggesting otherwise. *Id.* at 923 n. 1, *overruling, in part, State v. Werner*, 810 S.W.2d 621, 626 (Mo.App. 1991).[11]

### Cause Revisited

■■■ Finding Respondent's three arguments for cause insufficient, we return to the principle that Carver's error is charged to Price, so it is not a factor "external to the defense;" thus, it is not "cause." We could cite many cases for the following propositions, but *Coleman v. Thompson* summarizes them well.[12] Un-

---

**10.** Respondent ruled that Carver's failure to advise Price of his potential conflict of interest "constitutes Carver's abandonment of his client."

**11.** Nor is Price aided by *McFadden v. State*, 256 S.W.3d 103 (Mo. banc 2008), which our supreme court "emphasize[d]" was "limited to [its] specific factual scenario" where McFadden's counsel "overtly acted," "actively interfered," and "prevented" McFadden's

timely filing of an original PCR motion that McFadden had prepared. *Id.* at 109. The court carefully confined its holding to those "unique circumstances," and reiterated that PCR counsel's "lack of understanding of the rule" or " 'honest mistake' " will not justify failure to meet time requirements or warrant relief under the abandonment doctrine. *Id.*

**12.** Our subsequent references to *Coleman* may omit its internal quotes and citations.

less counsel's performance is *constitutionally* ineffective, there is no inequity in requiring a defendant " 'to bear the risk of attorney error that results in a procedural default.' " 501 U.S. at 752, 111 S.Ct. 2546. Since there is no *constitutional* right to PCR counsel, there can be no basis to claim that PCR counsel was *constitutionally* ineffective. *Id.* Thus, counsel's error resulting in a late PCR filing cannot be of *constitutional* dimension, so the defendant "must bear the risk of attorney error that results in a procedural default." *Id.* at 752–53, 111 S.Ct. 2546.

Thus, the Supreme Court has "explained clearly that 'cause' under the cause and prejudice test must be something *external* to the petitioner, something that cannot fairly be attributed to him." *Id.* at 753, 111 S.Ct. 2546. Attorney ignorance or inadvertence is not "cause" because the attorney is the defendant's agent; thus, the defendant must bear the risk of attorney error. *Id.*[13] Carver, as already noted, testified with commendable candor and no contradiction that neither the State nor any third party misled him, and the error was "completely" his fault. Since such error was chargeable to Price, it was not external to the defense and could not constitute cause.

As Price has not shown cause to excuse his procedural default, we need not reach the issue of prejudice. *Murray,* 477 U.S. at 496–97, 106 S.Ct. 2639.

## Manifest Injustice

Again without further explanation or evident rationale, Respondent also found that Price "sufficiently established manifest injustice." We already noted that, except in rare and exceptional circumstances not present here, "manifest injustice" requires "a showing of newly discovered evidence of actual innocence." *State ex rel. Verweire v. Moore,* 211 S.W.3d 89, 93 (Mo. banc 2006)(citing *Clay v. Dormire,* 37 S.W.3d 214, 217 (Mo. banc 2000)).[14] This means Price first had to produce "new" evidence, then show " 'it is more likely than not that no reasonable juror would have convicted him in light of the new evidence.' " *See Osborne v. Purkett,* 411 F.3d 911, 920 (8th Cir.2005)(quoting *Schlup v. Delo,* 513 U.S. 298, 327, 115 S.Ct. 851, 130 L.Ed.2d 808 (1995)). Evidence is "new" only if it was " 'not available at trial and could not have been dis-

---

13. *Coleman* explains that *constitutionally* ineffective assistance of counsel is "cause," not because "the error is so bad that the lawyer ceases to be an agent of the petitioner," but because "the Sixth Amendment itself requires that responsibility for the default be imputed to the State." 501 U.S. at 753–54, 111 S.Ct. 2546. "In other words, it is not the gravity of the attorney's error that matters, but that it constitutes a violation of petitioner's right to counsel, so that the error must be seen as an external factor, *i.e.,* 'imputed to the State.' " *Id.* at 754, 111 S.Ct. 2546, wherein the Court continued:

> Where a petitioner defaults a claim as a result of the denial of the right to effective assistance of counsel, the State, which is responsible for the denial as a constitution-

al matter, must bear the cost of any resulting default and the harm to state interests that federal habeas review entails. A different allocation of costs is appropriate in those circumstances where the State has no responsibility to ensure that the petitioner was represented by competent counsel. As between the State and the petitioner, it is the petitioner who must bear the burden of a failure to follow state procedural rules.

14. *Moore* involved such a "rare and exceptional" situation, and perhaps the only one that our supreme court has identified to date: "where the court can determine from the face of the record of the guilty plea proceeding that the defendant pleaded guilty to a crime he or she did not commit." 211 S.W.3d at 93.

covered earlier through the exercise of due diligence.' " *Id.* (quoting *Amrine v. Bowersox,* 238 F.3d 1023, 1029 (8th Cir.2001)).

Price has offered no "new" evidence as defined above, nor did Respondent so find, and Price has not claimed otherwise on appeal.[15] We cannot ignore that failure, but even if we could, neither Price nor Respondent nor the record suggests how or why—in a case where 12 jurors unanimously found Price guilty in 20 minutes—that it now "is more likely than not that *no* reasonable juror would have convicted him." *Schlup,* 513 U.S. at 327, 115 S.Ct. 851 (emphasis ours).

## Conclusion

It is unnecessary to consider Relator's other points. The record does not support Respondent's "cause and prejudice" and "manifest injustice" rulings; her "abandonment" finding contravenes our supreme court's controlling precedent. Respondent exceeded her authority in granting habeas relief. The circuit court's record granting the writ of habeas corpus is quashed.

BARNEY and BATES, JJ., concur.

**15.** Indeed, the foundation for Price's assertions and Respondent's findings that Price's counsel was ineffective was that the evidence that Miller and Guyer provided at the habeas hearing *was* available at the time of trial and *could* have been discovered and offered in Price's defense through the exercise of reasonable diligence.