**Robert HIGGINS and Nella Higgins, Petitioners,**

v.

**MISSOURI DIVISION OF FAMILY SERVICES, and the Honorable Judges of the Eleventh Circuit Juvenile Court of Missouri, William M. Turpin, Donald E. Dalton and Fred Rush, and the Juvenile Officer of Said Court, Raymond J. Grush, Respondents.**

No. 61128.

Supreme Court of Missouri, En Banc.

April 25, 1979.

Rehearing Denied May 22, 1979.

Lea W. Clayton, Clayton, for petitioners.

William J. Hannah, Pros. Atty., Linda S. Robinson, Asst. Pros. Atty., St. Charles, Glenn E. Robinson, Mo. Div. of Family Services, Jefferson City, for respondents.

ANDREW JACKSON HIGGINS, Special Judge.

Original proceeding in habeas corpus to obtain juvenile from custody of Division of Family Services. Petitioners, husband and wife, reside in St. Charles County, Missouri. They applied to the Division to become foster parents November 28, 1976, and were approved as such February 3, 1977.

Baby Girl Jane Doe was born and abandoned August 19, 1977, in St. Charles County, Missouri. She was taken to St. Joseph Hospital in St. Charles; and a proceeding, "In Interest of Baby Girl Jane Doe," was initiated by the Juvenile Officer in the Juvenile Division of the Circuit Court of St. Charles County August 19, 1977. The Juvenile Court, Honorable Fred Rush, entered an Order August 19, 1977, which recited that complaint had been made by the Juvenile Officer that said child came within the purview of applicable provisions of Section 211.031 RSMo by reason of "abandonment," and that the Juvenile Court had made preliminary inquiry to determine interests of the public and the child; and directed the Juvenile Officer "to place said child in temporary custody of the Division of Family Services * * * pending hearing and further Order" of the court.

The Juvenile Officer filed the petition envisioned by Rule 114 August 23, 1977, and recited that Baby Girl Jane Doe was in need of care and treatment by the Court within the purview of Section 211.031 RSMo because of her abandonment, and that the child was in the temporary custody of the Division of Family Services. He prayed for the Court's jurisdiction and such orders, judgments and decrees with respect to her care, custody, maintenance, treatment and education as may be in accordance with law and for the best interest of the child and the public good.

Baby Girl Jane Doe was taken from the hospital by the Division of Family Services and placed in the licensed foster home of Mr. and Mrs. Higgins August 24, 1977, where she received foster care until June 23, 1978, for which Mr. and Mrs. Higgins were paid at the rate of $106 per month.

The Division of Family Services advised Mr. and Mrs. Higgins that Baby Girl Jane Doe would be removed from their foster home June 7, 1978, for placement elsewhere. A representative of the Division went to the Higgins home to get the child June 7, 1978, and was advised that Mrs. and Mrs. Higgins were not at home and had taken the child.

Mr. and Mrs. Higgins filed a petition for transfer of custody and to adopt Baby Girl Jane Doe June 7, 1978; and secured a temporary injunction against removal of the child by the Division of Family Services from the Magistrate Court of St. Charles County.

The Circuit Court, Honorable William M. Turpin, entered an order June 23, 1978, which dissolved the temporary injunction issued June 7, 1978. Subsequently, on June 23, 1978, the Division of Family Services removed Baby Girl Jane Doe from the home of Mr. and Mrs. Higgins.

Mr. and Mrs. Higgins petitioned the Missouri Court of Appeals, St. Louis District, June 26, 1978, for Writ of Habeas Corpus to be directed to the Division of Family Services. The writ issued June 27, 1978, and was quashed June 29, 1978.

Mr. and Mrs. Higgins filed their petition in this court December 1, 1978, and subject Writ of Habeas Corpus issued December 18, 1978. After pleadings and briefs were settled, the matter came on for hearing April 23, 1979.

Petitioners contend the removal and detention of Baby Girl Jane Doe by the Division of Family Services to be illegal and without color of law; and that the child should be discharged from custody of the Division and placed in custody of the petitioners for adoption.

Respondents contend the writ should be quashed because petitioners fail to show any illegality in the custody exercised by the Division of Family Services.

■ The applicable law is stated, *In re L.G.*, 502 S.W.2d 33, 35 (Mo.App.1973): "The writ of habeas corpus may be em-

ployed to exercise the right of lawful custody, but it may not be employed to interfere with the inherent right and jurisdiction of the circuit courts to determine and award custody of the minor child in cases where they have proper jurisdiction, and in which they have exercised that jurisdiction by making a custody award." See also *In re Wakefield*, 283 S.W.2d 467, 471–472[5, 6] (Mo. banc 1975).

■ The Circuit Court (Juvenile Court) of St. Charles County had jurisdiction of the proceedings involving Baby Girl Jane Doe. She was in St. Charles County "in need of care and treatment" because her parents abandoned her. § 211.031 RSMo.

The circuit court (juvenile court) exercised that jurisdiction when it ordered and placed temporary custody of Baby Girl Jane Doe in the Division of Family Services until further order of the court. Such is the only order with respect to "legal custody," Rule 110.05a(13), of Baby Girl Jane Doe. Petitioners received Baby Girl Jane Doe from her custodian, Division of Family Services, for foster care for which they were paid, and their Petition for Transfer of Custody preliminary to proposed adoption acknowledges such limitation on their relationship to Baby Girl Jane Doe.

Accordingly, the writ of habeas corpus issued December 18, 1978, is quashed.

BARDGETT, DONNELLY, SIMEONE and WELLIVER, JJ., concur.

SEILER, J., dissents in separate dissenting opinion filed.

RENDLEN, J., dissents and concurs in separate dissenting opinion of SEILER, J.

MORGAN, C. J., not sitting.

SEILER, Judge, dissenting.

The majority opinion denies the writ on the ground that under the law the division of family services is not illegally restraining the infant child. This may be true technically speaking, but if so this case is a grievous example of the juvenile court ignoring what is in the best interests of the child.

The child has yet to have any hearing on what is in her best interests. The child was in the lawful custody of the Higgins family, placed there by the division. It is claimed (and we do not know it to be otherwise) that the Higgins family made known, early and on numerous occasions, their desire to adopt the child. They took care of the child for the first ten months of her life. There is an offer of substantial evidence in the file that the Higgins were good parents, that the child was thriving with them, and that it was detrimental to the child for her to be removed from the Higgins family. There really is no claim by respondents to the contrary.

Yet with only scant notice and with no pretense of a hearing or consideration by any impartial arbiter as to whether to do so was in the best interests of the child, the child was removed from Mr. and Mrs. Higgins and transferred to a new family.

On the day the child was abandoned, on the highway, August 19, 1977, the juvenile officer filed a petition under § 211.081,[1] requesting that the court make a preliminary inquiry. This resulted in an immediate order placing temporary custody in the division of family services. On August 23, 1977, the juvenile officer filed a petition under § 211.031 and § 211.091. This calls for a hearing, § 211.171, and the court has authority to employ the services of qualified medical experts in considering the disposition of the child, § 211.161.

Despite the fact that rule 119.01 requires that a hearing shall be set as soon as practicable after the petition is filed, there has been no juvenile hearing in this case, even though fifteen to sixteen months elapsed before petitioners resorted to habeas corpus in this court.[2]

In the meantime, the child has been with the new family and of course the argument is made that it would now be detrimental to

---

1. All statutory references are to RSMo 1969.

2. The Comment to rule 119.01 points out that "[d]elay in adjudication is inimical to the purposes of the Juvenile Code."

the best interests of the child to change her again from one family to another. The result is that the child's fate is determined by default, by inaction and by mere passage of time. The procedure followed in this case ignores the best interests of the child and permits grave abuse and arbitrary favoritism, regardless of whether in fact it has occurred here.