**STATE of Missouri ex rel. Dan WHITE, Clay County Prosecutor, Relator,**

v.

**The Honorable Elizabeth DAVIS, Judge of Division 5 of the Circuit Court of Clay County, Missouri, Respondent.**

**No. WD 64791.**

Missouri Court of Appeals, Western District.

Aug. 2, 2005.

Motion for Rehearing and/or Transfer to Supreme Court Denied Oct. 4, 2005.

Application for Transfer Denied Nov. 22, 2005.

unless barred by the statute of limitations). *See also, People v. Short,* 4 Ill.App.3d 849, 281 N.E.2d 785 (1972).

Andrew W. Hassell, Office of Attorney General, Jefferson City, for Appellant.

Ruth E. Smalley, Office of Public Defender, Liberty, for Respondent.

RONALD R. HOLLIGER, Presiding Judge.

Dan White, the Clay County Prosecutor (hereinafter "Relator"), seeks a writ of *certiorari* asking this court to quash the grant by respondent of a *habeas corpus* writ ordering the release of Joshua Trowbridge from confinement in the Clay County Jail. Trowbridge was confined pursuant to a *capias* warrant issued by the Honorable Rex A. Gabbert, another judge of that circuit, pending a probation revocation hearing. Trowbridge argued that on the face of the record he was being illegally held because his probation term had expired.

Relator contends that Judge Davis exceeded her jurisdiction in granting the writ on two grounds. First, relator argues that *habeas corpus* relief was unavailable to Trowbridge because he had other adequate remedies available to seek relief. As part of that argument the relator contends that respondent had no right to use *habeas corpus* to interfere in a pending case. A corollary of that argument is that the respondent by means of *habeas corpus* was, in effect, exercising appellate jurisdiction over another division of the same court and/or prohibition (which the relator argues the *habeas* relief amounts to) when such relief is reserved exclusively to the appellate courts and the Supreme Court. Finally the State argues in the alternative that the grant of relief was inappropriate because Trowbridge's probation had not expired prior to the initiation of the probation revocation proceedings.

We granted *certiorari* and now deny the State's request to quash the writ of *habeas corpus*.

**Factual and Procedural Background**

On August 16, 2002, Trowbridge pleaded guilty to the offense of Possession of a Controlled Substance. The plea judge suspended imposition of sentence and placed Trowbridge on a two-year term of probation, with participation in the county drug court program.

Trowbridge's term on probation was not without incident. On September 6, 2002, he violated conditions imposed by the drug court and was placed in the Clay County Jail for seventy-two hours. On July 18, 2003, a probation violation report was filed, resulting in the suspension of Trowbridge's probation on August 15, 2003, as well as the issuance of a warrant for his arrest. A second probation violation report was filed on August 29, 2003. A probation revocation hearing was held before Judge Gabbert on September 26, 2003. At that time, Trowbridge admitted violating terms of his probation because of his failure to return to in-patient drug treatment.

An "amended sentence and judgment" entered by Judge Gabbert following the September 26 hearing forms the crux of the underlying dispute between Trowbridge and the State. The amended judgment recited that imposition of sentence was suspended and indicated that Trowbridge was ordered to complete a two-year term of probation. The parties, here, disagree as to whether this amended judgment served to extend Trowbridge's probation (pursuant to Section 559.036.3, RSMo) or whether it was merely recapitulation of the terms from the original judgment with regard to probation with an additional requirement of institutional drug treatment. If it was not sufficient to extend his probation, then Trowbridge's probation would expire in mid-August 2004.

The "amended sentence and judgment" purported to place Trowbridge in the custody of the Department of Corrections for 120 days for institutional drug treatment pursuant to Section 559.115, RSMo 2000.[1] Such placement is, of course, impossible without the imposition of a sentence. Because Trowbridge had a suspended imposition of sentence he could not be placed in the 559.115 program. Section 217.785, RSMo, however, permits the placement of a defendant in an institutional drug treatment program as a condition of probation without revocation or, as in this case, imposition of a sentence. Upon completion of that program the defendant returns to community supervised probation automatically without further action of the court. Although there is no documentation in the file changing the terms and description of the drug treatment placement, Trowbridge apparently entered the institutional treatment phase under 217.785 and returned to regular probation thereafter.

This did not end Trowbridge's difficulties on probation. On June 3, 2004, Trowbridge was, again, ordered to spend forty-eight hours in the Clay County Jail following the filing of a probation violation report. Another probation violation report was filed on September 29, 2004, that alleged that Trowbridge was using methamphetamine. A third violation report was filed on October 7, 2004, alleging that he violated the terms of his probation by failing to report, to advise his probation officer of his current address, to enter a treatment program, and to submit to drug surveillance. The report also alleged that Trowbridge had absconded from supervision. Judge Gabbert issued a *capias* warrant, leading to Trowbridge's arrest on October 20, 2004. Another probation violation report was filed on November 2, 2004, adding allegations of marijuana and alcohol use, as well as failure to appear in court.

A motion to dismiss was filed by Trowbridge, arguing that his probation had expired as a matter of law on August 16, 2004, and that Judge Gabbert lacked jurisdiction to conduct probation revocation proceedings. At a hearing held on November 4, 2004, Judge Gabbert declined to permit argument on the motion to dismiss and denied Trowbridge's oral motion for release from custody pending the revocation hearing. The probation revocation hearing was continued until December 2, 2004.

Trowbridge then filed a petition for writ of *habeas corpus* on November 8, 2004, which was assigned to Judge Davis, the respondent in the present matter. That writ petition alleged that Trowbridge's detention in the Clay County Jail was illegal because his probation had expired and the Circuit Court of Clay County had no jurisdiction to revoke his probation. Argument was held on the writ petition on November 18, 2004. Judge Davis granted the writ petition the following day, ordering Trowbridge released from the Clay County Jail.

Daniel White, the Clay County Prosecutor, then filed the present writ of *certiorari* seeking that the writ of *habeas corpus* be quashed.

## Discussion

■■■■ Here, Trowbridge sought and obtained a writ of *habeas corpus* from Judge Davis to obtain his release from custody on the basis that he was illegally confined.[2]

---

1. All further statutory citations are to RSMo 2000, unless otherwise indicated.

2. We note, in passing that this form of *habeas corpus* is also known as the writ of *habeas corpus ad subjiciendum*. BLACK'S LAW DICTIONARY 709 (6th ed.1990). There are a number of other species of the writ of *habeas corpus* that are utilized for other purposes. For ex-

Given that there is no appeal from such a grant, the State may obtain review by filing a petition for writ of *certiorari* in the appropriate appellate court. *State ex rel. Beaird v. Del Muro*, 98 S.W.3d 902, 906 (Mo.App.2003). We grant review in such matters as a matter of course and of right. *Id.* Following review, we may either quash the writ of *habeas corpus*, or uphold the actions of the *habeas* court. *Id.* Our review is limited to a determination of whether the *habeas* court exceeded the bounds of its jurisdiction. *Id.* We review only questions of law, not of fact, and are generally limited to the record before the *habeas* court. *Id.* at 907. Questions of sufficiency of the evidence, however, are questions of law and may be considered by this court in conducting its review. *Id.*

Relator presents two arguments in support of its petition for *certiorari* relief. First, the State contends that Judge Davis both lacked jurisdiction and exceeded her jurisdiction in granting Trowbridge's petition for writ of *habeas corpus* on the ground that he had other adequate remedies available to him. As part of this argument the State also contends that respondent had no jurisdiction to interfere in a pending probation revocation proceeding before Judge Gabbert. Alternatively, the State contends that Judge Davis exceeded her jurisdiction in granting *habeas* relief because Trowbridge's probation had been properly extended in September 2003 and

thus the circuit court still had jurisdiction to revoke his probation.

Relator argues that Trowbridge's appropriate remedy was a writ of prohibition filed in this court.[3] Although prohibition is an available remedy in a situation such as this, it is not the exclusive means of relief. Historically *habeas corpus* has been frequently used in probation revocation situations. In *Beaird*, for instance, this court affirmed the issuance of a *habeas corpus* writ by a circuit court judge with regard to an individual incarcerated following a probation revocation proceeding before another judge of the same court. *Id.* at 910. The petition for writ of *habeas corpus* was brought after revocation but challenged not the expiration of probation but the procedure used in the revocation hearing (notice was inadequate). The *habeas* relief, therefore, returned the probationer to his pre-revocation status where revocation proceedings could be resumed.

Obviously, this case comes to us in a different procedural posture than *Beaird* in that Trowbridge's probation has not been revoked but, he argues, has expired.[4] Is the difference significant? Relator argues that the remedies available to an individual facing probation revocation differ at various stages of the proceeding. Considering those remedies is important, the relator urges, as "[t]he relief available under a writ of *habeas corpus* has traditionally been very limited, and courts are not required to issue this extraordinary

ample, *habeas corpus* may be used to obtain the temporary transfer of a prisoner for purposes of giving testimony (writ of *habeas corpus ad testificandum* ) or for purposes of prosecuting the prisoner for some other offense (writ of *habeas corpus ad prosequendum* ). *Id.* at 709–10. None of these other purposes are applicable here, however, and the present opinion is not intended to address any of those latter forms of the writ or relief that might be available following grants of such writs.

**3.** Relator does not argue that Trowbridge should have filed his petition for writ of *habeas corpus* initially in the court of appeals perhaps because of the provisions of Rule 91.02(a).

**4.** Respondent points us to no reported opinion that addresses a similar procedural posture, nor has our research identified any such case.

writ where other remedies are adequate and available." *Clay v. Dormire*, 37 S.W.3d 214, 217 (Mo. banc 2000). Thus, the threshold questions, here, are whether Trowbridge had other remedies available to him at the time he sought *habeas corpus* relief and, if so, whether those remedies were adequate.

Trowbridge could have also sought extraordinary relief by filing a petition for writ of prohibition in this court seeking to bar Judge Gabbert from conducting the probation revocation proceeding. *See, e.g., State ex rel. Heberlie v. Martinez*, 128 S.W.3d 616, 616 (Mo.App.2004); *State ex rel. Moyer v. Calhoun*, 22 S.W.3d 250, 251 (Mo.App.2000); *State ex rel. Brown v. Combs*, 994 S.W.2d 69, 70 (Mo.App.1999); *State ex rel. Wright v. Dandurand*, 973 S.W.2d 161, 161 (Mo.App.1998); *State ex rel. Limback v. Gum*, 895 S.W.2d 663, 663 (Mo.App.1995).

■ This court has superintending control over the circuit courts and other courts within its district. Mo. CONST., art. V, Section 4(1); *State, ex inf. Nixon v. Kinder*, 89 S.W.3d 454, 459 (Mo. banc 2002). The above-cited cases are instances in which the appellate courts exercised that superintending control to bar a circuit court from conducting probation revocation proceedings where the lower court was without jurisdiction to undertake such actions.

■ *Clay* and other similar cases, however, deal with the concept of other adequate relief in the context of remedy by appeal or post-conviction proceeding. See *Clay*, 37 S.W.3d at 217. There is of course no appeal from the revocation of probation. We have found no case holding that *habeas* is not proper if other extraordinary relief such as prohibition is available, and we find no sound policy reason for so restricting *habeas* relief.

"Of all the five extraordinary remedies or writs, *habeas corpus* receives very special treatment. It stands alone, in a class by itself; and well it should, for it is our one great writ of right, the greatest and most important of all our writs. Herein is expressed our philosophy that the personal liberty of the individual is yet the most jealously guarded and provided for, even more than our rights of property, sacred as we regard them." "Habeas Corpus Under Missouri's New Code and Constitution," 18 Kansas City L.Rev. 173 (1950). The Missouri Constitution Article I, section 12, declares, "That privilege of the writ of habeas corpus shall never be suspended." And original Supreme Court Rule 1.23 exempted *habeas corpus* from its general policy not to issue remedial writs where adequate relief can be afforded by an appeal or by application for the writ to a lower court. Even current Supreme Court Rules 84.22 and 91.02 treat *habeas corpus* differently allowing it to be originally filed in an appellate court if good cause is shown. Rule 84.22 does prohibit issuance of a writ where adequate relief can be provided by appeal. But as said earlier there is no appeal from probation orders and no similar prohibition is stated restricting a circuit court from issuing *habeas corpus* even where relief by appeal is available. Finally, and most importantly, there is nothing in the rules or cases that holds that the availability of a remedy by appeal deprives a court of jurisdiction, as argued by relator, to entertain a petition for a *habeas* writ. To the contrary, it has been held to be merely procedural. *State ex rel. Roberts v. Buckley*, 533 S.W.2d 551, 553 (Mo. banc 1976).

We hold, therefore, that the respondent did not err as urged by relator in granting *habeas* relief merely because another extraordinary remedy, prohibition, was also available.

In the second part of its first point the State argues that *habeas corpus* cannot be used to interfere in a pending matter. This argument is expressly based on a contention that respondent lacked jurisdiction because the probation matter was pending before Judge Gabbert. Relator argues that respondent violated article V, section 4, of the Missouri Constitution vesting superintending control of courts and tribunals in the court of appeals and the Supreme Court. Relator devotes two sentences to the development of this argument and does not address the provisions of article V, section 14, which grant circuit courts the power to issue original remedial writs. We assume that relator contends that respondent was exercising appellate jurisdiction of Judge Gabbert's order of confinement and that a circuit court has no appellate jurisdiction as such over a co-equal court. Although we agree with the proposition that appellate jurisdiction generally lies in the appellate courts we do not understand how this principle deprives a circuit court of jurisdiction which it otherwise has to examine the legality of confinement by *habeas corpus*. Almost every exercise of *habeas* power involves indirectly the question of whether there is a proper order of confinement by some other circuit court. There could be no sound argument that a circuit court could never grant *habeas* relief if an individual was confined by order of another circuit court. The use of *habeas* by respondent was not unconstitutional under article V, section 14.

Relator cites to several child custody cases in support of its argument that respondent lacked jurisdiction. None of those cases stand for that proposition. In *Higgins v. Missouri Division of Family Services,* 580 S.W.2d 300 (Mo. banc 1979), foster parents by original proceeding attempted to challenge the removal of a baby by DFS who was under jurisdiction of a juvenile court pursuant to Section 211.031, RSMo. Although the State here correctly asserts that the Supreme Court denied *habeas* relief, the court did not hold that it lacked jurisdiction to grant *habeas* relief because the case was pending. Rather, the court specifically held that the custody order was lawful and that *habeas* may not be used to interfere with a court having *proper* jurisdiction and exercising that jurisdiction. *Id.* at 302. The essence of Trowbridge's claim is that he was being unlawfully confined because of a lack of proper jurisdiction.

The other case relied upon, *B.M.P. v. G.H.P.,* 612 S.W.2d 843 (Mo.App.1981), is equally unhelpful. There, a mother sought custody by *habeas corpus* while an appeal was pending from a dissolution decree awarding custody to the father. The court at length considered the cases prohibiting determinations of fitness and custody by use of *habeas corpus* when either dissolution actions were pending or appeals from such dissolution were pending. Nevertheless, the court considered whether lawful custody should be in the mother because she had filed a supersedeas bond on appeal. *Id.* at 845. In other words, even though the case was pending, the court still considered *habeas* relief to the extent of examining whether the custody placement was lawful. *See also Fleming v. Fleming,* 562 S.W.2d 168 (Mo.App.1978) (*habeas corpus* proper where the order awarding custody is challenged because of an illegality appearing on the face of the record).

Relator also argues that permitting respondent to grant *habeas corpus* in this situation would lead to chaotic results where a defendant or probationer may seek *de facto* appellate review of an unfavorable decision from another division of the circuit court in which the criminal case is pending. That argument ignores the

limited nature of *habeas* relief which only examines the lawfulness of a petitioner's confinement; and although the nature of the confinement order and its lawfulness in this case hinges upon whether Trowbridge's probation had expired and Judge Gabbert had lost jurisdiction, a loss of jurisdiction by a co-equal court is not the sole or even the usual basis for a request for *habeas* relief. Relator's suggestion that we impose a blanket prohibition on any *habeas* relief that collaterally attacks a confinement order of a co-equal court is neither justified legally, by the important policies underlying the writ of *habeas corpus,* nor to avoid the chaos relator suggests.

Point denied.

■ Relator's second point contends that the respondent's grant of *habeas* relief was erroneous because Judge Gabbert still retained probation jurisdiction over Trowbridge at the time that he issued a *capias* warrant for his arrest. Both parties agree that the original term of probation was never revoked, that the original term of probation would have expired August 16, 2004, and that the violations that led to the order of confinement occurred after that date. Both also agree that whether Trowbridge remained subject to the terms of probation depends upon whether his probation was extended pursuant to Section 559.036 before August 16.

■ More correctly stated, however, the question before us is whether the record before respondent showed that there was a legal basis for the Sheriff's confinement of Trowbridge. "Generally, *habeas corpus* proceedings are limited to determining the facial validity of confinement." *State ex rel. Nixon v. Jaynes,* 73 S.W.3d 623, 624 (Mo. banc 2002). The record before respondent has been extensively discussed earlier. There is no docket entry, other order, or oral pronouncement that the court was extending Trowbridge's probation beyond its original term. Relator argues unconvincingly that the "amended judgment and sentence" extended Trowbridge's probation for another two years. No such words were used in the order, however. The "amended sentence" was identical to the original sentence except for the placement ordered pursuant to Section 559.115. As discussed earlier, that placement would have required a revocation of probation and imposition of a prison term. Release after completion of that program would have necessarily been on a new probation. However, the court's comments clearly indicate that it wanted to continue Trowbridge on probation with a suspended imposition of sentence. Moreover, relator admits that probation was never revoked. If there was any intent in the "amended judgment and sentence" to do anything more than provide for institutional drug treatment with continued SIS status, it is not expressed. On the face of the record before this court, Trowbridge's probation expired on August 16, 2004, and his subsequent confinement for alleged probation violations after that date was illegal. Therefore, respondent was obligated to issue the writ of *habeas corpus.*

The judgment of the *habeas* court is affirmed.

ROBERT G. ULRICH, Judge, and LISA WHITE HARDWICK, Judge, concur.