Victor C. Howard, Presiding Judge
This is an original proceeding in certiorari to review the record in the case of Stalnacker v. McBee , Circuit Court of Livingston County, Missouri, Case No. 17LV-CC00179. In that case, the Honorable Thomas Chapman issued a writ of habeas corpus to Doris Stalnacker on March 5, 2018.[1] Following the issuance of the writ of habeas corpus, the Attorney General of the State of Missouri (Attorney General) filed a petition for writ of certiorari in this Court, which we granted as a matter of right.
*200 State ex rel. Nixon v. Kelly , 58 S.W.3d 513, 516 (Mo. banc 2001). Because we conclude that the habeas court had the authority to act and did not abuse its discretion in granting the writ of habeas corpus, we refuse to quash the record of the habeas court.
Factual and Procedural History
On April 8, 2008, Stalnacker entered a guilty plea to one count of the class B felony of Possession of a Controlled Substance with the Intent to Distribute, section 195.211.[2] The Circuit Court of Mississippi County sentenced Stalnacker to fifteen years' imprisonment, suspended execution of sentence with five-years' supervised probation. On June 8, 2010, Stalnacker's probation was ordered revoked and the fifteen-year sentence ordered executed, with the court retaining jurisdiction to place Stalnacker on probation after attending the Missouri Department of Corrections (MDOC) 120-day Institutional Treatment Program pursuant to 559.115.[3] After successfully completing the 120-day program, Stalnacker was ordered released on October 8, 2010, and placed on five years' probation.
Stalnacker's probation continued without incident until a Notice of Citation was filed with the probation court in August 2013. The citation was for failure to pay court costs. Stalnacker's probation was suspended until March 2014 when she appeared in the probation court. At that hearing, the trial court stated that "no earned compliance credit in this case will be allowed." Subsequent documents from the Board of Probation and Parole reflected that Stalnacker's earned compliance credit had been removed by the court, and her probation was scheduled to expire on her original discharge date of October 7, 2015.
Stalnacker's probation continued without incident until a Violation Report was filed in March 2015. The sentencing court issued a "Show Cause Summons Probation Violation" ordering Stalnacker to appear, and a probation revocation hearing was scheduled. After several delays, a hearing was held on January 12, 2016. Following the hearing, Stalnacker's probation was revoked and her fifteen-year sentence was ordered executed. Stalnacker was remanded to the custody of the MDOC.
On August 4, 2016, Stalnacker filed a pro se Motion for Habeas Corpus. The court appointed counsel and an Amended Petition for Writ of Habeas Corpus was filed on December 13, 2017. Neither party requested argument. The habeas court granted the petition, issuing a Judgment and Order on March 5, 2018. The habeas court found that based on the Earned Compliance Credits (ECCs) Stalnacker had accumulated while on probation, Stalnacker's term of probation expired on August 13, 2014, over seven months prior to the sentencing court issuing its show cause order. Further, the habeas court found that even excluding all ECCs, Stalnacker's probation term expired on October 7, 2015, prior to the probation revocation hearing. The habeas court found the sentencing court failed to make every reasonable effort to conduct the probation revocation hearing on or before October 7, 2015, as required by law.
The Attorney General filed a Petition for Writ of Certiorari in this Court seeking review of the habeas record. We issued a writ of certiorari and ordered the Livingston County Circuit Court to return the record of the habeas proceedings to this Court for review.
*201 Standard of Review
Rule 91.01(b) provides that "[a]ny person restrained of liberty within this state may petition for a writ of habeas corpus to inquire into the cause of such restraint." "In general, a habeas corpus proceeding is limited to determining the facial validity of confinement." State ex rel. Beaird v. Del Muro , 98 S.W.3d 902, 906 (Mo. App. W.D. 2003) (internal quotation omitted). There is no appeal from the grant of a writ of habeas corpus. State ex rel. White v. Davis , 174 S.W.3d 543, 547 (Mo. App. W.D. 2005). "[T]he State may obtain review by filing a petition for writ of certiorari in the appropriate appellate court." Id. "We grant review in such matters as a matter of course and of right." Id. "Following review, we may either quash the writ of habeas corpus, or uphold the actions of the habeas court." Id.
"Certiorari is available to correct judgments that are in excess or an abuse of jurisdiction, and that are not otherwise reviewable [on] appeal." State ex rel. Koster v. Green , 388 S.W.3d 603, 606 (Mo. App. W.D. 2012) (internal quotation omitted). "Our review is limited to whether the habeas court exceeded the bounds of its authority to grant habeas relief or abused its discretion in issuing the writ of habeas corpus." Id. "In applying this standard of review, we do not review findings of fact." Id. "We limit our review to questions of law presented by the record before the habeas court." Id.
"The habeas court will have exceeded the bounds of its authority if the evidence as a whole does not support the grant of a writ of habeas corpus in light of the applicable law." Id. "[E]very lawful intendment will be made in favor of the determination and the regularity of the proceedings below." Id. (internal quotation omitted). "The habeas court will have abused its discretion if its ruling is clearly against the logic of the circumstances then before the court and is so arbitrary and unreasonable as to shock the sense of justice and indicate a lack of careful consideration." Id. at 606-07 (internal quotation omitted).
Analysis
In his Petition for Writ of Certiorari, the Attorney General contends in his first point on appeal that the habeas court acted beyond its authority in issuing the writ because Stalnacker's claim that her ECCs were incorrectly calculated is not a cognizable claim in a petition for writ of habeas corpus under Missouri law. In his second point on appeal, the Attorney General argues that, the habeas court erred in determining that, regardless of ECCs, the sentencing court improperly revoked Stalnacker's probation after her probationary term had expired.
Stalnacker was placed on probation in 2010. Section 217.703 was enacted effective August 28, 2012. It provided:
1. The division of probation and parole shall award earned compliance credits to any offender who is:
(1) Not subject to lifetime supervision under sections 217.735 and 559.106 or otherwise found to be ineligible to earn credits by a court pursuant to subsection 2 of this section;
(2) On probation, parole, or conditional release for an offense listed in chapter 195 or for a class C or D felony, excluding the offenses of aggravated stalking, sexual assault, deviate sexual assault, assault in the second degree under subdivision (2) of subsection 1 of section 565.060, sexual misconduct involving a child, endangering the welfare of a child in the first degree under subdivision (2) of subsection 1 of section 568.045, incest, invasion of privacy, and abuse of a child;
*202 (3) Supervised by the board; and
(4) In compliance with the conditions of supervision imposed by the sentencing court or board.
In section 573.217.2, the statute addresses offenders placed on probation, parole, or conditional release for certain specified offenses. For those offenders:
the sentencing court may, upon its own motion or a motion of the prosecuting or circuit attorney, make a finding that the offender is ineligible to earn compliance credits because the nature and circumstances of the offense or the history and character of the offender indicate that a longer term of probation, parole, or conditional release is necessary for the protection of the public or the guidance of the offender. The motion may be made any time prior to the first month in which the person may earn compliance credits under this section. The offender's ability to earn credits shall be suspended until the court or board makes its finding. If the court or board finds that the offender is eligible for earned compliance credits, the credits shall begin to accrue on the first day of the next calendar month following the issuance of the decision.
Section 217.703 further provides that:
3. Earned compliance credits shall reduce the term of probation, parole, or conditional release by thirty days for each full calendar month of compliance with the terms of supervision. Credits shall begin to accrue for eligible offenders after the first full calendar month of supervision or on October 1, 2012, if the offender began a term of probation, parole, or conditional release before September 1, 2012.
4. For the purposes of this section, the term "compliance" shall mean the absence of an initial violation report submitted by a probation or parole officer during a calendar month, or a motion to revoke or motion to suspend filed by a prosecuting or circuit attorney, against the offender.
5. Credits shall not accrue during any calendar month in which a violation report has been submitted or a motion to revoke or motion to suspend has been filed, and shall be suspended pending the outcome of a hearing, if a hearing is held. If no hearing is held or the court or board finds that the violation did not occur, then the offender shall be deemed to be in compliance and shall begin earning credits on the first day of the next calendar month following the month in which the report was submitted or the motion was filed. All earned credits shall be rescinded if the court or board revokes the probation or parole or the court places the offender in a department program under subsection 4 of section 559.036. Earned credits shall continue to be suspended for a period of time during which the court or board has suspended the term of probation, parole, or release, and shall begin to accrue on the first day of the next calendar month following the lifting of the suspension.
...
7. Notwithstanding subsection 2 of section 217.730 to the contrary, once the combination of time served in custody, if applicable, time served on probation, parole, or conditional release, and earned compliance credits satisfy the total term of probation, parole, or conditional release, the board or sentencing court shall order final discharge of the offender, so long as the offender has completed at least two years of his or her probation or parole, which shall include any time served in custody under section 217.718 and sections 559.036 and 559.115.
*203 8. The award or rescission of any credits earned under this section shall not be subject to appeal or any motion for post-conviction relief.
...
Section 217.703 was amended with the changes effective August 28, 2013. Those changes pertained to the offenses which are eligible for ECCs and do not impact the current case. That version of section 217.703 remained in effect until December 31, 2016. State ex rel. Parrott v. Martinez , 496 S.W.3d 563 (Mo. App. E.D. 2016) was decided under that version of section 217.703. There, the court held that "monthly 'compliance' under the earned compliance credit statute is not defined as the strict fulfillment of each and every term of probation in a given month but is defined as the absence of an initial violation report or a motion to revoke or suspend." Id. at 569 (citing section 217.703.4). Thus, a court cannot "unilaterally deny a probationer credit under the statute based upon [an] alternative definition of compliance." Id.
Section 217.703 was amended again effective January 1, 2017. Those changes pertained to the offenses which are eligible for ECCs and do not impact the current case. Section 217.703 was amended a third time, effective August 28, 2018. These changes were more substantive. In 217.703.4, the definition of compliance was broadened to include the absence of a notice of citation. Section 217.703.5 was changed as follows, with the underlined and bolded text being added to the section:
5. Credits shall not accrue during any calendar month in which a violation report, which may include a report of absconder status, has been submitted, the offender is in custody, or a motion to revoke or motion to suspend has been filed, and shall be suspended pending the outcome of a hearing, if a hearing is held. If no hearing is held, or if a hearing is held and the offender is continued under supervision, or the court or board finds that the violation did not occur, then the offender shall be deemed to be in compliance and shall begin earning credits on the first day of the next calendar month following the month in which the report was submitted or the motion was filed. If a hearing is held, all earned credits shall be rescinded if:
(1) The court or board revokes the probation or parole or the court places the offender in a department program under subsection 4 of section 559.036 or under section 217.785; or
(2) The offender is found by the court or board to be ineligible to earn compliance credits because the nature and circumstances of the violation indicate that a longer term of probation, parole, or conditional release is necessary for the protection of the public or the guidance of the offender.
Earned credits, if not rescinded, shall continue to be suspended for a period of time during which the court or board has suspended the term of probation, parole, or release, and shall begin to accrue on the first day of the next calendar month following the lifting of the suspension.
Section 217.703.6 expanded the definition of "absconder." Section 217.703.7 added the requirement that restitution be completed before an order of final discharge could be entered for the offender and included time spent on conditional release in the two year calculation.[4]
*204 The proceedings currently before us occurred prior to the August 28, 2018 version of section 217.703. Under that framework, the offender "shall" be awarded ECCs for every month she was in compliance so long as the criteria of 217.703.1 and .2 have been met. They have in this case, and no party argues otherwise. Stalnacker was placed on probation in 2010, and section 217.703 first allowed offenders to earn ECCs in September 2012. Those ECCs were first realized on October 1, 2012. Stalnacker did not have a notice of citation[5] until August 13, 2013. Thus, she was in compliance from September 2012 through July 2013. See Parrott , 496 S.W.3d 563.
The following shows that, as of August 2013, application of earned ECCs moved Stalnacker's release date to November 11, 2014:
October 1, 2012 - Original release date of October 7, 2015 moved to September 7, 2015 for ECCs earned in September 2012
November 1, 2012 - release date moved to August 8, 2015 for ECCs earned in October 2012
December 1, 2012 - release date moved to July 9, 2015 for ECCs earned in November 2012
January 1, 2013 - release date moved to June 9, 2015 for ECCs earned in December 2012
February 1, 2013 - release date moved to May 10, 2015 for ECCs earned in January 2013
March 1, 2013 - release date moved to April 10, 2015 for ECCs earned in February 2013
April 1, 2013 - release date moved to March 11, 2015 for ECCs earned in March 2013
May 1, 2013 - release date moved to February 9, 2015 for ECCs earned in April 2013
June 1, 2013 - release date moved to January 10, 2015 for ECCs earned in May 2013
July 1, 2013 - release date moved to December 11, 2014 for ECCs earned in June 2013
August 1, 2013 - release date moved to November 11, 2014 for ECCs earned in July 2013
This is not discretionary under section 217.703. The statute provides a formula and mandates its application under specified conditions with the word "shall."
The only discretionary power in the pre-2018 version of section 217.703 is found in section 217.703.2 which provided that offenders who committed specified crimes may be found ineligible to earn ECCs. The motion to find an offender ineligible, however, had to be made "prior to the first month in which the person may earn compliance credits under this section." Stalnacker was not convicted of one of those specified crimes and no motion to render her ineligible to earn ECCs was ever filed in her case prior to the first month she could earn ECCs. Thus, Stalnacker earned the ECCs outlined above by operation of the version of section 217.703 in effect at the time.
*205 Stalnacker appeared in court in March 2014 to address the August 2013 Notice of Citation. At that time, the court declared that "no earned compliance credit in this case will be allowed." The court did not have this authority under the pre-2018 version of section 217.703. Part of the 2018 amendments included a provision granting courts this authority in the future. "The legislature's amendment of a statute is not a useless act, but one that is designed to effect some change in the law, including judicial opinions." Mikel v. McGuire , 264 S.W.3d 689, 692 (Mo. App. W.D. 2008). The current version of section 217.703.5 states, in part, that if a hearing is held after a notice of violation then the probation court may rescind ECCs and find the offender ineligible to earn future ECCs. This provision was not in effect at the time of Stalnacker's case, however.
After the March 2014 hearing, Stalnacker's probation continued without incident until a violation report was filed in March 2015. That violation report ultimately resulted in Stalnacker's probation being revoked in January 2016. Yet, Stalnacker should have been discharged in 2014, as set forth above. She should have been discharged before the violation report was ever filed.
"Section 559.036 governs the duration of probation terms and the power of a court to revoke a defendant's probation." State ex rel. Strauser v. Martinez , 416 S.W.3d 798, 801 (Mo. banc 2014). "If a defendant violates his or her probation, the court may revoke it." Id. (citing sections 559.036.3 and 559.036.5). "But the court's authority to do so only extends through the duration of the probation term." Id. (citing section 559.036.8). "When the probation term ends, so does the court's authority to revoke probation." Id. The court lacked the authority to revoke Stalnacker's probation here, because the term ended in 2014.
The Attorney General does not assert that the earned ECC as set forth above is incorrect. He does not argue that Stalnacker failed to be in compliance prior to August 2013. He also does not claim the court had the authority to rescind the ECCs earned more than a year after Stalnacker started earning them.
Instead, the Attorney General's sole argument with respect to this contention is that the habeas court acted beyond its authority because Stalnacker cannot complain about ECCs in a habeas proceeding. He cites section 217.703.8 which states:
The award or rescission of any [compliance] credits earned under this section shall not be subject to appeal or any motion for postconviction relief.
The Attorney General maintains that a habeas corpus proceeding is a motion for postconviction relief. He argues that because the language does not specifically identify Rules 29.15 and 24.035 proceedings, that the legislature intended the language "appeal or any motion for postconviction relief" to be broader than those proceedings. The Attorney General further argues that Rules 29.15 and 24.035 "are carve-outs of the authority of habeas courts" and are merely "the first step in Missouri's post-conviction relief process." He states that "habeas corpus is but a part of Missouri's post-conviction process."
We are unpersuaded. Section 217.703.8 cannot prevent the entry of habeas relief because the General Assembly has no power to restrict habeas relief. The Bill of Rights, Missouri Constitution Article 1, Section 12 provides that: "In order to assert our rights, acknowledge our duties, and proclaim the principles on which our government is founded, we declare: ... That the privilege of the writ of habeas *206 corpus shall never be suspended." See also section 532.010 et seq. ; Rule 91. This provision of the Constitution has been construed by our Supreme Court as follows: "Inasmuch as habeas corpus jurisdiction springs from the constitution, it may not be eliminated by statute or rule." White v. State , 779 S.W.2d 571, 573 (Mo. banc 1989). Thus, the language prohibiting review of ECCs through "any motion for postconviction relief" is limited to Rule 24.035 and Rule 29.15 motions. This is consistent with the General Assembly's authority.
With respect to the Attorney General's first point, the habeas court had the authority to review Stalnacker's claim pertaining to ECCs. The Attorney General's first point is denied. With respect to the Attorney General's second point, Stalnacker's probation should have expired in 2014. This was before proceedings were initiated to revoke her probation. The second point is also denied.
Conclusion
For the reasons stated above, we refuse to quash the record of the habeas court. We affirm the habeas court's judgment and order Stalnacker released from confinement and relieve her from the execution of her sentence.
Witt, J. concurs
Mitchell, J. concurs

After issuing the judgment in Stalnacker's habeas case in March 2018, Judge Chapman was appointed to serve as a judge of this Court. He has not participated in the consideration or decision of this appeal.

RSMo 2000, updated at the time of Stalnacker's arrest.

RSMo 2000, as updated through the 2009 supplement.

Section 217.703 was again amended in 2018 in the First Extraordinary Session of the Second Regular Session of the 99th General Assembly by House Bill 2, but those changes are inapplicable to this matter.

In the original statute, compliance was defined as a lack of Notice of Violation. A lack of Notice of Citation was not included in the definition of compliance until the August 2018 amendments. This suggests that an offender could receive a Notice of Citation and still be in compliance prior to the 2018 amendments. We need not address this issue, however. Assuming Stalnacker's August 2013 Notice of Citation was sufficient to render her not in compliance and ineligible for ECCs that month, she had still earned sufficient ECCs for this case.