

# In the
# Missouri Court of Appeals
### Western District

| | | |
|---|---|---|
| STATE OF MISSOURI EX REL. ANDREW BAILEY, | ) ) ) | |
| Relator, | ) ) | |
| V. | ) ) | WD87449 |
| HON. DREW F. DAVIS, CIRCUIT JUDGE OF DEKALB COUNTY, | ) ) ) | OPINION FILED: NOVEMBER 19, 2024 |
| Respondent. | ) ) ) ) | |

### ORIGINAL PROCEEDING IN PROHIBITION

Before Writ Division:  Cynthia L. Martin, Presiding Judge, Lisa White Hardwick, Judge and Gary D. Witt, Judge

The Attorney General seeks a permanent writ of prohibition or mandamus preventing the Honorable Drew F. Davis ("Respondent") from ordering Victor Vickers ("Vickers") released from custody following the issuance of a preliminary writ of habeas corpus.  Because Respondent acted in excess of its authority and abused its discretion when it issued a preliminary writ of habeas corpus and ordered Vickers released from custody, this Court makes its preliminary writ of prohibition absolute, and issues a permanent writ prohibiting Respondent from taking any further action other than to

vacate the preliminary writ of habeas corpus and order for release, and to enter an order denying Vickers's petition for writ of habeas corpus.

## Background

Vickers was convicted and sentenced to life without parole after a jury trial on first-degree murder and related charges. His convictions were reversed, and a new trial ordered, in response to Vickers's Rule 29.15 motion for postconviction relief. *Vickers v. State*, 632 S.W.3d 781 (Mo. App. W.D. 2021). Vickers then entered an *Alford* plea[1] to voluntary manslaughter, second-degree assault, and armed criminal action. Vickers was sentenced to concurrent sentences totaling fifteen years on April 14, 2022. The judgment of conviction and sentence ordered that Vickers "be given credit for 3,767 days against the sentences imposed," based on "time spent awaiting trial in this case in the Jackson County Detention Center, all time spent in federal custody in 12-00283-06-CR-W-DW, and all time spent in the Missouri Department of Corrections since 2016 for the previously imposed sentence of life imprisonment."

Vickers was delivered to the Department of Corrections, and was originally in custody in the Crossroads Correctional Center in DeKalb County, Missouri. The Department of Corrections calculated Vickers's jail-time credit, and awarded 2,695 days. The Department of Corrections did not award jail-time credit for 1,072 days that Vickers

---

[1]"Under *North Carolina v. Alford*, [400 U.S. 25 (1970)], a defendant may enter what is, in effect, a guilty plea, even though the defendant protests that he or she is innocent of the crime charged." *Shores v. State*, 674 S.W.3d 127, 130 n.3 (Mo. App. W.D. 2023) (quotation omitted).

spent in federal custody. The Department of Corrections calculated Vickers's conditional release date as November 27, 2026.

On April 13, 2023, Vickers filed a petition for declaratory judgment in the Circuit Court of Cole County, Missouri, Case No. 23AC-CC02368, against the Department of Corrections. Vickers sought a declaration that he was entitled to 1,072 days of jail-time credit that the Department of Corrections failed to apply towards the service of his sentence ("Declaratory Judgment Action"). Vickers also sought a declaration that his conditional release date should be December 20, 2023, based on the additional days of jail-time credit.

Following cross motions for summary judgment, the circuit court in the Declaratory Judgment Action entered its memorandum, order, and judgment on April 17, 2024, granting the Department of Corrections' motion for summary judgment and denying Vickers's motion for summary judgment, and entering judgment in favor of the Department of Corrections ("Judgment"). The Judgment found that Vickers was not entitled to jail-time credit for the time spent in federal custody pursuant to section 558.031, RSMo 2016, which was the same version of the statute in effect at the time Vickers committed his offenses on August 16, 2011. The Judgment also found that although the criminal sentencing court purported to award jail-time credit for the time Vickers was in federal custody, that portion of the judgment of conviction and sentence had no legal effect. The circuit court relied on *Farish v. Missouri Department of Corrections*, 416 S.W.3d 793, 798 (Mo. banc 2013), which held that pursuant to section 558.031 then in effect, the calculation of jail-time credit is an administrative function of

3

the Department of Corrections, and a sentencing court has no authority to award jail-time credit.

Vickers filed a timely notice of appeal from the Judgment on May 28, 2024. That appeal is pending in this Court as WD87214. Vickers's appeal has been fully briefed, and is set on the submitted-on-briefs docket with a submission date of November 22, 2024.

On July 19, 2024, almost two months after Vickers filed his appeal from the Judgment, Vickers filed a petition for writ of habeas corpus in the Circuit Court of Dekalb County, Missouri ("habeas court"), naming Chris Brewer, as Superintendent of the Crossroads Correctional Center as the respondent. At the time the habeas petition was filed, Vickers was incarcerated at the Crossroads Correctional Center, so that his habeas petition had to be filed "in the first instance" in the circuit court in "the county in which the person is held in custody . . . unless good cause is shown for filing the petition in a higher court." Rule 91.02.[2] The petition for writ of habeas corpus asserted that Vickers was being unlawfully restrained because he had not been given jail-time credit for the 1,072 days he spent in federal custody even though that was the criminal sentencing court's intention, and even though his state offenses were related to the time spent in federal custody. The petition for writ of habeas corpus disclosed that Vickers had previously filed the Declaratory Judgment Action "seeking the same relief," and that the Declaratory Judgment Action was "now in the Court of Appeals." On July 25, 2024,

---

[2]All Rule references are to *Missouri Court Rules, Volume I -- State, 2024* unless otherwise noted.

4

Vickers filed a "motion for issuance of emergency preliminary writ ordering [Vickers] immediate release from custody" in the habeas court.

The habeas court issued a show cause order on July 29, 2024, directing the respondent named in the habeas petition to show cause in writing by August 19, 2024, "why the motion for issuance of emergency preliminary writ should not be granted." The Attorney General did so on the named respondent's behalf, and argued, among other things, that Vickers's jail-time credit claim was the same claim that had already been determined in the Declaratory Judgment Action.

On August 28, 2024, the habeas court entered its "Order Granting Motion for Preliminary Writ of Habeas Corpus," ("Preliminary Writ of Habeas Corpus"), finding that Vickers was not given 3,767 days of jail-time credit as ordered by the criminal sentencing court, and that had Vickers been given this credit, "he would already have been released from prison." The Preliminary Writ of Habeas Corpus ordered Vickers "released from custody pending further proceedings."

On the same day, the habeas court's docket sheet reflects an entry that "[t]he Court, having been advised that [Vickers] is now incarcerated at Northeast Correctional Center, on the Court's own motion, orders Clay Stanton, Superintendent of Northeast Correctional Center, substituted as [r]espondent in this matter."[3] The habeas court then

---

[3]The record establishes that Vickers was transferred to Northeast Correctional Center at some point after his petition for writ of habeas corpus was filed in DeKalb County. The Attorney General represents that Northeast Correctional Center is a lower security facility than Crossroads Correctional Center, and that Vickers's transfer was a result of the application of procedures that authorize such transfers when an incarcerated individual has minimal time left to be served on a sentence.

5

issued an order to the substituted respondent requiring Vickers's immediate release from confinement. The order noted that Northeast Correctional Center is located in Bowling Green, Missouri. This Court takes judicial notice that Bowling Green, Missouri is located in Pike County, Missouri, and that Pike County, Missouri lies within the jurisdictional boundaries of this Court's Eastern District.[4]

The habeas court then entered an order on August 28, 2024, staying enforcement of the Preliminary Writ of Habeas Corpus and the order directing Vickers's release "until 5:00 p.m. on August 29, 2024, to allow [r]espondent to seek review in the Missouri Court of Appeals." The habeas court's docket sheet reflects that the pending habeas proceeding was set for a status conference on September 23, 2024, at 10:00 a.m., confirming that the Preliminary Writ of Habeas Corpus issued on August 28, 2024, was not intended by the habeas court to be a final determination of Vickers's habeas petition.

On August 29, 2024, the Attorney General filed a Petition for Writ of Prohibition or Mandamus, with Suggestions in Support in this Court, challenging the habeas court's issuance of the Preliminary Writ of Habeas Corpus and of the directive requiring Vickers's release from confinement.[5] The Attorney General requested an emergency stay to allow sufficient time for this Court to consider the writ petition.

---

[4]Courts are permitted to take judicial notice of geographical facts. *See, e.g.*, *Goforth v. Director of Revenue*, 593 S.W.3d 124, 130 n.4 (Mo. App. W.D. 2020).

[5]Where the *final* determination of a petition for writ of habeas corpus results in the grant of a writ of habeas corpus, the State has no right of appeal, but is entitled as a matter of right to file a writ of certiorari requiring an appellate court to review the record in the habeas proceedings to determine if the writ of habeas corpus should be quashed or not quashed. *State ex rel. Nixon v. Kelly*, 58 S.W.3d 513, 516 (Mo. banc 2001). That relief was not available to the State after the habeas court's issuance of the Preliminary

6

On August 29, 2024, this Court issued a Preliminary Writ of Prohibition, prohibiting Respondent or anyone else from taking action to enforce Respondent's August 28, 2024 Order Granting Vickers's Motion for Preliminary Writ of Habeas Corpus; prohibiting Respondent or anyone else from taking action to enforce Respondent's August 28, 2024 order issued to Clay Stanton, Superintendent, Northeast Correctional Center which directed Vickers's release from custody subject to noted conditions; and prohibiting Respondent or anyone else from taking any further action in the habeas proceedings until further order of this Court. This Court also directed expedited briefing from the parties on the merits of the Attorney General's writ petition and dispensed with oral argument, and the submission of a record on appeal. Rule 84.24(f), (g), (h).

**Standard of Review**

This Court has jurisdiction to issue original remedial writs pursuant to article V, section 4.1 of the Missouri Constitution. A writ of prohibition is appropriate: "(1) to prevent the usurpation of judicial power when a lower court lacks authority or jurisdiction; (2) to remedy an excess of authority, jurisdiction or abuse of discretion where the lower court lacks the power to act as intended; or (3) where a party may suffer irreparable harm if relief is not granted." *State ex rel. Monsanto Co. v. Mullen*, 672

---

Writ of Habeas Corpus as the habeas court had not yet made a final determination on Vickers's habeas petition, and retained authority over the matter as reflected by its scheduling of a status conference. The State's ability to secure review of the habeas court's issuance of the Preliminary Writ of Habeas Corpus and of the order requiring Vickers immediate release from confinement was thus limited to seeking a writ of prohibition or mandamus.

7

S.W.3d 235, 239 (Mo. banc 2023) (quoting *State ex rel. T.J. v. Cundiff*, 632 S.W.3d 353, 355 (Mo. banc 2021)).

## Analysis

In its brief, the Attorney General raises eight challenges to the Respondent's Preliminary Writ of Habeas Corpus and order directing Vickers's immediate release from confinement. The Attorney General challenges: the habeas court's authority to order Vickers's release from confinement without first issuing a permanent writ of habeas corpus (Point One); the habeas court's authority to order relief against Clay Stanton, Superintendent of Northeast Correctional Center because that correctional facility is not within the habeas court's territorial venue (Point Two); the habeas court's authority to take any action other than to deny Vickers's petition for habeas relief because the same claim it asserts was litigated to a final judgment in the Declaratory Judgment Action (Point Three); the habeas court's authority to take any action other than to deny Vickers's petition for habeas relief because Vickers's jail-time credit claim has been the subject of denied habeas petitions filed in this Court and in the Missouri Supreme Court (Point Four); the habeas court's authority to order Vickers's release from confinement because even if his jail-time credit claim is correct, he is not entitled to immediate discharge (Point Five); the habeas court's authority to take any action other than to deny Vickers's petition for habeas relief because Vickers has engaged in piecemeal litigation by filing the same claim in multiple courts simultaneously (Point Six); and the habeas court's authority to take any action other than to deny Vickers's petition for habeas relief because the criminal sentencing court had no authority to award jail-time credit to Vickers (Point

8

Seven), and the time Vickers spent in federal custody was not compelled exclusively by the State of Missouri (Point Eight).

Because Point Three is dispositive, we begin our analysis addressing the preclusive effect of the Judgment entered in the Declaratory Judgment Action on Vickers's petition for writ of habeas corpus.

In the Declaratory Judgment Action, Vickers's petition set forth factual allegations that are materially indistinguishable from the statement of facts set forth in his petition for writ of habeas corpus. In the Declaratory Judgment Action, Vickers's petition alleged that he was entitled to jail-time credit for the time spent in federal custody because his state and federal charges were related. Vickers also alleged that the criminal sentencing court had expressly ordered that Vickers be credited for 3,767 days of jail-time credit, which included 1,072 days spent in federal custody, and that he was entitled to the benefit of the sentencing court's intent. Vickers sought a declaration that he was entitled to an additional 1,072 days of jail-time credit and a recalculated conditional release date of December 20, 2023.

As previously noted, the Judgment entered in the Declaratory Judgment Action rejected Vickers's claims on their merits. The Judgment found that Vickers's entitlement to jail-time credit was subject to calculation based on the statute in effect at the time of his August 16, 2011 offenses (section 558.031, RSMo 2016), and that under that version of the statute, the test is not, as Vickers argues, whether the time spent in federal custody was related to his state offenses. The Judgment found that based on the statute applicable to Vickers's offenses, Vickers was not entitled to jail-time credit for the time spent in

federal custody unless that time was "compelled exclusively" by Missouri, a test Vickers could not satisfy because Vickers's federal custody was caused, at least in part, by the action of the federal government. Finally, the Judgment found that although the criminal sentencing court purported to award jail-time credit for the time Vickers spent in federal custody, under the statute in effect at the time of Vickers's offenses, the calculation of jail-time credit was an administrative function of the Department of Corrections, and the sentencing court had no authority to award jail-time credit.

Vickers appealed the Judgment, and that appeal is pending in this Court. Several weeks after appealing the Judgment, Vickers filed his petition for writ of habeas corpus alleging that the Department of Corrections refused to give him jail-time credit for 1,072 days spent in federal custody, and arguing that had he been given this credit, his conditional release date would have been December 20, 2023. Vickers alleged the failure to give credit for this time was unlawful under section 558.031.1 because his state and federal charges were related. Vickers argued he was entitled to habeas relief because the sentencing court intended to give him jail-time credit for the time spent in federal custody, and that he was thus serving a sentence in excess of the maximum permitted by law in violation of his due process rights because he had not been given jail-time credit for the time spent in federal custody.

Vickers's petition for writ of habeas corpus disclosed that he had previously "pursued other avenues seeking the same relief," including the Declaratory Judgment Action now pending on appeal in this Court. To explain the filing of a petition for writ of habeas corpus despite having sought the same relief in the Declaratory Judgment Action,

10

Vickers alleged only that the appeal in the Declaratory Judgment Action "could take a substantial amount of time to be concluded."

It is facially plain that the basis for habeas relief asserted in Vickers's petition for writ of habeas corpus is indistinguishable from the basis for declaratory judgment relief sought in the Declaratory Judgment Action. In both actions, Vickers claimed he was entitled to an additional 1,072 days of jail-time credit, representing time spent in federal custody, because that time was related to his state offenses and because the criminal sentencing court expressed the intent to give him jail-time credit for the time spent in federal custody.[6] In both actions, Vickers claimed that his conditional release date should be recalculated to December 20, 2023, in light of the additional 1,072 days of jail-time credit.

"[U]nder Missouri law, a judgment on the merits at the trial-court level is considered a final judgment for purposes of *res judicata* and collateral estoppel, even if the appeal of that judgment is still pending." *Brown v. Brown-Thill*, 437 S.W.3d 344, 349 (Mo. App. W.D. 2014) (quoting *Noble v. Shawnee Gun Shop, Inc.*, 316 S.W.3d 364, 369 (Mo. App. W.D. 2010)). "*Res judicata* is based on the principle that a party should not be allowed to litigate a claim and then, after an adverse judgment, seek to relitigate the

---

[6]Vickers's creative attempt in his habeas petition to recast the deprivation of jail time credit purportedly awarded by the sentencing court as a due process violation is an unavailing maneuver that does not change the fact that the genesis of his claim is that the sentencing court's expressed intent should control--a contention soundly rejected by the Judgment in the Declaratory Judgment Action.

11

identical claim in a second proceeding." *Andes v. Paden, Welch, Martin & Albano, P.C.*, 897 S.W.2d 19, 21 (Mo. App. W.D. 1995).

Applying this settled law to the facts and circumstances in this case, the Judgment is a final judgment for purposes of *res judicata* even though Vickers's appeal from the Judgment is still pending. Vickers is not allowed to relitigate the jail-time credit claim in the habeas proceeding filed after Vickers received the adverse Judgment in the Declaratory Judgment Action. Instead, Vickers is bound by the merits-based determination of his jail-time credit claim in the Declaratory Judgment Action.

We recognize that "[o]f all the five extraordinary remedies or writs, *habeas corpus* receives very special treatment." *State ex rel. White v. Davis*, 174 S.W.3d 543, 548 (Mo. App. W.D. 2005) (quotation omitted). Habeas relief "stands alone, in a class by itself; and well it should, for it is our one great writ of right, the greatest and most important of all our writs." *Id.* (quotation omitted). In fact, [t]he Missouri Constitution, Article I, section 12, declares, 'That privilege of the writ of habeas corpus shall never be suspended.'" *Id.* But, although Vickers may not be subject to an absolute procedural bar to *filing* a petition seeking habeas relief, he nonetheless bears the burden of proof as a habeas petitioner to show he is entitled to habeas relief. *State ex rel. Johnson v. Blair*, 628 S.W.3d 375, 381 (Mo. banc 2021). "[H]abeas review does not provide duplicative and unending challenges to the finality of a judgment, so it is not appropriate to review claims already raised . . . ." *Id.* (quotation omitted). "A strong presumption exists . . . against claims that already have once been litigated." *Id.* (quotation omitted).

Vickers's habeas petition does not challenge the circuit court's lawful authority or jurisdiction to determine his Declaratory Judgment Action on the merits. *Cf. State ex rel. White*, 174 S.W.3d at 549 (noting the difference between a habeas petition that challenges restraint based on a court's lack of proper jurisdiction in a related pending matter, and a habeas petition that interferes in a pending matter where the lawful jurisdiction of the court in that matter is not challenged). The only "challenge" raised by Vickers in an effort to avoid the Judgment's preclusive effect is that an appeal of the Judgment could take too long to resolve. That assertion is of no solace to Vickers, and affords no escape from the preclusive effect of the Judgment's merits-based determination of his jail-time credit claim.

This Opinion should not be read to impose a blanket prohibition on every attempt to seek habeas relief that attacks a contrary order or judgment entered by a co-equal court. *See State ex rel. White*, 174 S.W.3d at 549. However, in the absence of any allegation that the circuit court in the Declaratory Judgment Action lacked lawful authority or jurisdiction over Vickers to determine his jail-time credit claim, we have no difficulty concluding that Vickers cannot sustain his burden to establish that he is entitled to habeas relief because his jail-time credit claim was preclusively determined in the Declaratory Judgment Action. The habeas court thus exceeded its authority and abused its discretion when it entered a Preliminary Writ of Habeas Corpus and ordered Vickers's immediate release from confinement, as those actions were in irreconcilable conflict with the Judgment, the lawful entry of which is not challenged. *See, e.g.*, *In re Wakefield*, 283 S.W.2d 467, 472-73 (Mo. banc 1955) (holding that the writ of habeas corpus "may not be

13

employed to interfere with the inherent right . . . of our circuit courts to determine and award custody of minor children in divorce cases of which they have proper jurisdiction and in which they have exercised that jurisdiction by making a custody award of record," and that "when the right to custody has once been finally determined and the award thereof becomes a final judgment, no other court may interfere . . . ."); *Hirst v. Cramer*, 195 S.W.2d 738 (Mo. banc 1946) (quashing writ of habeas corpus sought after probate court entered a judgment adjudging the habeas petitioner to be of unsound mind and committing her to a state mental facility where record shows habeas petitioner was duly served such that the probate court acquired personal jurisdiction over her). "It is well settled that habeas corpus is a discretionary writ, and it will not be issued when it is unnecessary to afford petitioner the relief to which he [claims he] is entitled." *White v. State*, 779 S.W.2d 571, 573 n.2 (Mo. banc 1989) (quotation omitted).

Because we agree with the contention raised by the Attorney General's Point Three, we need not address or resolve the unusual procedural issues framed by the Attorney General in Points One and Two, which address, respectively, the habeas court's authority to order the immediate release of Vickers from confinement based on the issuance of a *preliminary* writ of habeas corpus, and the habeas court's authority to continue to entertain Vickers's habeas petition after Vickers was transferred from a correctional facility in DeKalb County to a correctional facility located in a county that is outside the habeas court's territorial venue.[7]  We also need not address the challenges

---

[7]Though we need not address or resolve whether Vickers's transfer to a correctional center outside the habeas court's territorial venue required the habeas court to

raised by the Attorney General in Points Four though Eight. Points One, Two, Four, Five, Six, Seven and Eight are denied as moot.[8]

## Conclusion

Our preliminary writ of prohibition is made absolute. The Respondent is prohibited from taking any action other than to vacate the August 28, 2024 Preliminary Writ of Habeas Corpus, to vacate the August 28, 2024 order directing Clay Stanton, Superintendent, Northeast Correctional Center to release Vickers, and to enter an order denying Vickers' petition for writ of habeas corpus.

_Cynthia L. Martin_
Cynthia L. Martin, Presiding Judge

All concur

---

deny Vickers's habeas petition for want of authority to consider the acts of a warden in a county outside the habeas court's venue, we do note that Rule 91.02(a) permits a habeas petitioner to file a petition for habeas relief in a "higher court" if good cause is shown.

[8]The challenges raised by the Attorney General in Points Seven and Eight go to the substantive merit of Vickers's jail-time credit claim, and are within the purview of the pending appeal taken by Vickers from the Judgment issued in the Declaratory Judgment Action.

15